The Birmingham Racing Commission ("the Racing Commission") is a corporation organized pursuant to § 11-65-1 through -47, Ala. Code 1975. The Jefferson County Racing Association, Inc. ("the Racing Association"), is a corporation which operates the Birmingham Race Course. The Alabama Thoroughbred Association, Inc. ("the Thoroughbred Association"), was incorporated in March 1996 as a nonprofit corporation "for the purposes of promoting thoroughbred ownership, breeding, and racing for the State of Alabama."
In October 1991 the Racing Commission entered into a settlement agreement with the Horsemen's Benevolent Protective Association, Inc., and several local chapters of that association regarding the necessary consent for the simulcast televised transmission at the Birmingham Race Course of horse races from out-of-state tracks. The parties agreed that, in exchange for the consent, there would be at least 45 days/programs of live horse racing at the Birmingham Race Course during a five-year period beginning October 1, 1991, and ending on December 31, 1996, and that 5% of the wagering handle from the simulcast would be deposited into a special fund to be used for (1) live horse racing purses and (2) horsemen's benefits during live horse racing meets.
In 1993, pursuant to the terms of the 1991 settlement agreement, the Racing Commission enacted Rule VI, § 33(2), of the Rules of Pari-Mutuel Horse Racing. Rule VI, § 33(2), states:
 "Whenever simulcast races held at locations in other states are received by television and pari-mutuel wagering thereon is conducted, five percent (5%) of the wagering handle at the facility in Birmingham on such simulcast races shall be deposited by the licensed horse racing operator into a special fund maintained and controlled by the [Racing Commission] in interest-bearing accounts or certificates of deposit to be used for live horse racing purses and horsemen's benefits during live horse racing meets as directed by the [Racing Commission]. All such deposits shall be made or furnished to the Executive Secretary no later than the Monday following each week during which simulcast races are conducted. The [Racing Commission] shall not be entitled to any of the funds deposited into the special trust fund provided for by this paragraph. Said funds shall be applied solely for the uses specified and for no other purposes."
The 1991 settlement agreement and Rule VI, § 33(2), created an obligation on the part of the Racing Association to withhold and pay 5% of the simulcast wagering handle into the fund.
At the Racing Commission's December 1996 meeting, the Racing Association submitted for approval the 1997 racing dates application. The application included no live horse racing dates at the Birmingham Race Course for the 1997 racing season. There were questions and a discussion on the racing dates application, and final action on the racing dates application was held over until the Racing Commission's January 1997 meeting, because either the racing dates application would need to be changed or the Racing Commission's rules (specifically Rule VI, § 33(2)) would need to be amended. The Racing Commission determined that 5% of all simulcast wagering would continue to be paid into the fund until final action could be taken on the racing dates application. *Page 209 
On December 31, 1996, the 1991 settlement agreement expired by its terms. Between January 1 and January 13, 1997, the Racing Association paid approximately $50,000 to the Racing Commission, pursuant to the requirement of Rule VI, § 33(2).
At its January 1997 meeting the Racing Commission considered a request to amend the rule requiring the payment of 5% of all simulcast wagering into an fund. Michael Pizitz, the Thoroughbred Association's president, spoke at the Racing Commission's meetings held in December 1996 and January 1997. Pizitz expressed disappointment that live horse racing dates were not scheduled at the Birmingham Race Course for the 1997 racing season and he requested that the Racing Commission continue the 5% escrow fund through 1997 as an incentive to bring thoroughbred racing back to Birmingham in 1998. Pizitz stated that if live horse racing did not return to Birmingham in 1998, then the monies escrowed in 1997 could be returned to the Racing Association.
After discussion, the Racing Commission voted to rescind Rule VI, § 33(2), retroactively to January 1, 1997.
In March 1997, the Thoroughbred Association filed a complaint in the Jefferson County Circuit Court, pursuant to § 11-65-12, Ala. Code 1975, seeking a review of the action taken by the Racing Commission. Section 11-65-12, Ala. Code 1975, provides:
 "Any person aggrieved by . . . any . . . action or failure of action by the [Racing Commission], may, within 60 days of such action or failure of action, appeal to the circuit court of the host county. If such court finds that the action of such commission, or its failure to take action, was arbitrary, unreasonable or contrary to the provisions of this chapter, it shall order . . . such . . . remedial action as it deems appropriate in the circumstances."
In its complaint, the Thoroughbred Association sought "[a] declaration that the [Racing Commission's] January 13, 1997, action revoking Rule VI is not and cannot be retroactive but is merely prospective" and "an injunction to the [Racing Commission] to replace or to place in the trust account those funds required by Rule VI to be so deposited up through January 13, 1997, together with any interest such funds would have drawn had they properly been deposited in the account through that date."
The Racing Commission filed an answer arguing, among other things, that the Thoroughbred Association lacked standing to bring the present action because, it said, the Thoroughbred Association was not an intended beneficiary of the funds required under Rule VI, § 33(2); that the repeal of Rule VI, § 33(2), coincided with the cessation of live horse racing at the Birmingham Race Course and with the expiration of various private agreements; and that the repeal of Rule VI, § 33(2), was a lawful and valid exercise of its regulatory authority.
The Thoroughbred Association filed a motion for summary judgment as well as a brief, affidavits, and other documentary evidence in support of its motion. The Racing Commission filed a response in opposition to the summary judgment motion, and the Thoroughbred Association filed a reply brief.
After a hearing the trial court issued an order finding that the Thoroughbred Association had standing to sue and that the Racing Commission's actions were "arbitrary, unreasonable, or contrary to the provisions of the law." The trial court ordered the Racing Commission to deposit those funds that had accrued before the rescission of Rule VI, § 33(2), into the "special trust fund" and to pay interest on those funds from the date such deposits should have been made.
The Racing Commission filed a post-judgment motion seeking to have the trial court set aside its order. The Racing Association moved to intervene. The Thoroughbred Association filed a response in *Page 210 
opposition to the Racing Commission's post-judgment motion and a response in opposition to the Racing Association's motion to intervene.
After a hearing, the trial court denied the Racing Commission's post-judgment motion, and granted the Racing Association's motion to intervene. Both the Racing Commission and the Racing Association appeal.
The Racing Commission contends that the Thoroughbred Association does not have standing to bring the present action because, it says, the Thoroughbred Association lacks the status of an "aggrieved party," as is necessary for standing to sue. Black's Law Dictionary 65 (6th ed. 1990) defines "aggrieved party" as follows:
 "One whose legal right is invaded by an act complained of, or whose pecuniary interest is directly and adversely affected by a decree or judgment . . . . The word `aggrieved' refers to a substantial grievance, a denial of some personal, pecuniary or property right, or the imposition upon a party of a burden or obligation."
(Emphasis added.)
In Ex parte Smith, 406 So.2d 916, 918 (Ala. 1981), in which an "aggrieved party" is discussed, the court stated:
 "In order for a party to have standing to challenge the decision of a zoning board of adjustment he must be a `party aggrieved.' To establish himself as a `party aggrieved' he must present `proof of the adverse effect the changed status of the rezoned property has, or could have, on the use, enjoyment and value' of his own property."
In Ex parte Izundu, 568 So.2d 771, 772-73 (Ala. 1990), our supreme court, in a discussion on "standing," stated:
 "A party must allege an individual or representative right and a redressable injury to that right as a prerequisite to setting in motion the machinery of the court. See 59 Am.Jur.2d Parties § 31 (1987). In order to be a `proper party plaintiff, a person must have an interest in the right to be protected.' Eagerton v. Williams, 433 So.2d 436, 447 (Ala. 1983). As a general rule, `a litigant may not claim standing to assert the rights of a third party.' Jersey Shore Medical Center-Fitkin Hosp. v. Estate of Baum, 84 N.J. 137, 417 A.2d 1003
(1980). A party lacks standing to invoke the power of the court in his behalf in the absence of `a concrete stake in the outcome of the court's decision.' Brown Mechanical Contractors, Inc. v. Centennial Ins. Co., 431 So.2d 932, 937 (Ala. 1983).
In the present case there is no evidence that the Racing Commission's decision to repeal Rule VI, § 33(2), retroactively to January 1, 1997, either threatened or actually injured any property right or pecuniary interest of the Thoroughbred Association. The Thoroughbred Association thus failed to establish that it is "aggrieved" by the Racing Commission's decision. Indeed, the proof discloses no real or proprietary interest on the part of the Thoroughbred Association; it merely established its interest in bringing thoroughbred racing back to the Birmingham Race Course. Accordingly, the Thoroughbred Association has no standing to bring the present action.
Since this conclusion is dispositive of this case, we have pretermitted discussion of the remaining issues. Consequently the judgment of the trial court is due to be, and is hereby, reversed, and a judgment rendered in favor of the Racing Commission and the Racing Association.
The foregoing opinion was prepared by Sam A. Beatty, Retired Justice, Supreme Court of Alabama, while serving on active duty status as a judge of this court under the provisions of §12-18-10(e), Ala. Code 1975.
REVERSED AND RENDERED.
All the judges concur. *Page 211