52 So.3d 484 (2010)
Daniel G. HAMM and Leo Paul Brooks
v.
NORFOLK SOUTHERN RAILWAY COMPANY.
1060935.
Supreme Court of Alabama.
June 30, 2010.
*486 Joel F. Alexander III of Pittman, Dutton, Kirby & Hellums, P.C., Birmingham, for appellants.
Crawford S. McGivaren, Jr., Steve A. Tucker, and John M. Graham of Cabaniss, Johnston, Gardner, Dumas & O'Neal LLP, Birmingham, for appellee.
MURDOCK, Justice.
Leo Paul Brooks and Daniel G. Hamm, a trustee in bankruptcy for Brooks, appeal from a summary judgment entered in favor of Norfolk Southern Railway Company ("Norfolk Southern") in a personal-injury action Brooks filed in the Talladega Circuit Court pursuant to the Federal Employers Liability Act, 45 U.S.C. § 51 et seq. ("FELA"). We affirm in part, reverse in part, and remand.

*487 I. Facts and Procedural History

Brooks worked as a conductor and brakeman for Norfolk Southern from 1971 to 2004. On October 21, 2004, Brooks filed a petition for Chapter 7 bankruptcy (11 U.S.C. § 701 et seq.) in the United States Bankruptcy Court for the Middle District of Alabama. Brooks was represented in the bankruptcy proceedings by attorney Mark Cavanaugh. Along with his petition, Brooks filed schedules listing his debts and assets as well as a statement of financial affairs. He did not list among his assets a cause of action against Norfolk Southern.
On January 14, 2005, Brooks filed the present FELA action in the Talladega Circuit Court seeking $750,000 for injuries he allegedly had sustained to his "back, hips, and body as a whole" as a result of being "continuously and repeatedly exposed to numerous vibrations and other stresses to his cervical and lumbar spine" in the course of his career with Norfolk Southern. Brooks was and is represented in the FELA action by attorney Joel Alexander. Brooks did not amend his bankruptcy schedules or otherwise inform the bankruptcy court of the FELA claim he had filed against Norfolk Southern.
On March 2, 2005, Brooks received a complete discharge of his debts in the bankruptcy proceeding as a "no-assets" case. According to the briefs on appeal, both Norfolk Southern and Alexander learned of Brooks's bankruptcy during Brooks's deposition in the FELA action on January 31, 2006. On March 6, 2006, Norfolk Southern filed an amended answer to Brooks's complaint asserting the affirmative defense of judicial estoppel. On May 1, 2006, Norfolk Southern filed a motion for a summary judgment on the ground that Brooks's FELA action was barred by the doctrine of judicial estoppel because he had failed to disclose the FELA cause of action in his bankruptcy proceeding either at the time he filed the bankruptcy petition or at any time after he filed his complaint against Norfolk Southern.
On September 28, 2006, Brooks filed a response to the motion for a summary judgment, arguing first that Norfolk Southern had failed to cite any evidence indicating that Brooks knew before he filed his complaint that his injuries were related to his job with Norfolk Southern and therefore would provide the basis for a claim against Norfolk Southern. Brooks also contended that "a debtor has no obligation to amend his schedules to notify the bankruptcy court of claims that are not part of the bankruptcy estate." Alexander avers that at the time the argument was made in response to Norfolk Southern's summary-judgment motion he believed it to be a correct statement of law, but he unequivocally acknowledges in Brooks's brief to this Court that the argument was mistaken. The Bankruptcy Code provides, in 11 U.S.C. § 541(a)(7), that the bankruptcy estate includes "[a]ny interest in property that the estate acquires after the commencement of the case." Alexander explains that he believed when he made the argument that § 541(a)(7) was part of the 2005 amendments to the Bankruptcy Code and thus did not apply to Brooks's bankruptcy proceeding. Norfolk Southern points out that it cited both § 541(a)(7) and Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282 (11th Cir.2002), a case that cites § 541(a)(7) for authority, in its motion for a summary judgment, so Brooks and Alexander should have been aware of the applicability of § 541(a)(7) at that time.
A hearing on the summary-judgment motion was held on September 29, 2006. The trial court permitted the parties additional time following the hearing to submit legal authorities supporting their respective positions. On October 3, 2006, Norfolk Southern filed a letter brief with copies *488 of cases, including Burnes, as well as the text of § 541(a)(7). Alexander avers that, upon reviewing those materials, he realized that Brooks had had a responsibility to amend his bankruptcy schedules to reflect the claim against Norfolk Southern as an asset of the bankruptcy estate. To that end, Alexander contacted Cavanaugh to have him reopen the bankruptcy proceeding, but Alexander did not relate to the trial court that he had done so. Alexander states that he "felt he had time to get the bankruptcy case reopened before he reported back to the trial court . . . because the trial court had verbally stated it would permit [Brooks] to file supplemental materials before ruling on summary judgment motion." The record indicates that Alexander asked for and received two extensions for filing supplemental materials, requiring him to file by November 10, 2006.[1]
On October 11, 2006, Cavanaugh filed a motion on behalf of Brooks seeking to reopen Brooks's bankruptcy estate on the ground that Brooks had "filed a Chapter 7 Petition on 11/15/04 and failed to disclose a cause of action that existed on that date."[2] Brooks then amended his bankruptcy schedules to list the FELA claim against Norfolk Southern as a potential asset of the bankruptcy estate. The bankruptcy court granted the motion to reopen the proceeding on November 7, 2006.
On November 16, 2006, not having received any supplemental material from Brooks, the trial court granted Norfolk Southern's motion for a summary judgment, finding that Brooks was "barred by the doctrine of judicial estoppel pursuant to the holding in Ex parte First Alabama, 883 So.2d 1236 (Ala.2003)." On December 11, 2006, Brooks filed three separate, but related, motions with the trial court. First, Brooks filed a motion to substitute the bankruptcy trustee, Daniel G. Hamm, as the real party in interest to the case. Second, Brooks filed a motion to vacate the summary judgment on the ground that the bankruptcy proceeding had been reopened and Brooks's schedules had been amended to reflect the FELA claim as a potential asset. Third, Brooks filed a motion for the trial court to consider the pleadings and orders from the bankruptcy court in reconsidering the motion for a summary judgment.
On December 13, 2006, Hamm filed a motion in the bankruptcy court asking the court to approve the employment of Alexander as the bankruptcy trustee's attorney for the FELA action. On January 24, 2007, the bankruptcy court authorized Alexander's employment as Hamm's attorney for the FELA claim.
The trial court issued a blanket order denying Brooks's postjudgment motions on February 6, 2007. Brooks and Hamm appealed from that order on March 20, 2007. On May 2, 2007, Norfolk Southern filed a motion to dismiss the appeal or, in the alternative, to strike Hamm as an appellant. Norfolk Southern contended that Hamm was never a party to the judgment below and thus could not be a party to the appeal. Brooks and Hamm filed a response asking this Court to deny the motion or to consider it with the merits of the appeal. This Court later informed the parties that Norfolk Southern's motion *489 would be considered with the merits of the appeal.

II. Standard of Review
This Court reviews a trial court's rulings on postjudgment motions to determine whether the trial court exceeded its discretion. See Flagstar Enters., Inc. v. Foster, 779 So.2d 1220, 1221 (Ala.2000). We also find helpful the following explanation of the standard of review in Parker v. Wendy's International, Inc., 365 F.3d 1268, 1271 (11th Cir.2004):
"`[W]e review the district court's application of judicial estoppel for abuse of discretion.' Burnes [v. Pemco Aeroplex, Inc.], 291 F.3d [1282,] 1284 [(11th Cir. 2002)]. `The abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions.' Talavera v. School Bd. of Palm Beach County, 129 F.3d 1214, 1216 (11th Cir.1997)."

III. Analysis

A. Norfolk Southern's Motion to Dismiss the Appeal
Norfolk Southern contends that this Court should dismiss this appeal or at least strike Hamm as an appellant because he was not a party to the judgment below. Norfolk Southern notes that this Court has stated that, "`[u]nless a person is a party to a judgment, he can not appeal from that judgment.'" Boschert Merrifield Consultants, Inc. v. Masonite Corp., 897 So.2d 1048, 1051 (Ala.2004) (quoting Daughtry v. Mobile County Sheriff's Dep't, 536 So.2d 953, 954 (Ala.1988)).
In this case, however, Brooks and Hamm moved to substitute Hamm as the real party in interest. Included in that motion is the following statement:
"The undersigned [Alexander] is authorized to represent to this Court that Trustee Hamm joins in this motion, that Trustee Hamm has no intent of abandoning the claim, and that Trustee Hamm has asserted and will continue to assert to resolution an interest in the proceeds. The undersigned further represents that Trustee Hamm has agreed to engage the undersigned as counsel, and that the undersigned's petition to approve said representation has been, or soon will be, presented to the Bankruptcy Court for approval."
Hamm did, in fact, request and obtain from the bankruptcy court permission to employ Alexander as his counsel in prosecuting the FELA action before the trial court's denial of the motion to substitute Hamm as the real party in interest. Hamm then joined in the notice of appeal, which included appealing the trial court's denial of the motion to substitute Hamm as the real party in interest.
Under these circumstances, Norfolk Southern's motion to dismiss the appeal or to strike Hamm as a party to the appeal is due to be denied.

B. Brooks's Motion to Substitute Hamm as the Real Party in Interest
A decision on the motion to substitute Hamm as the real party in interest affects the disposition of the rest of the issues on appeal; thus, we address it next.
Rule 17(a), Ala. R. Civ. P., requires that "[e]very action shall be prosecuted in the name of the real party in interest" and that substitution of the real party in interest "shall have the same effect as if the action had been commenced in the name of the real party in interest." This Court has stated that "`the real party in interest principle is a means to identify the person who possesses the right sought to be enforced.'" State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1027 (Ala.1999) (quoting Dennis v. Magic City Dodge, Inc., 524 So.2d 616, 618 (Ala.1988)). Therefore, *490 we must determine whether Hamm possesses the right to enforce the FELA claim at issue, and, if so, whether the trial court exceeded its discretion in declining to substitute Hamm as the proper party.
All the parties have conceded that under § 541(a)(7) a claim such as Brooks's FELA claim against Norfolk Southern properly belongs to the bankruptcy estate for the benefit of the creditors. This is true even when the property has not been listed in the schedules at the time the bankruptcy case is closed. See, e.g., Lopez v. Specialty Rests. Corp. (In re Lopez), 283 B.R. 22, 28 (B.A.P. 9th Cir. 2002) (finding that "the Action became property of the bankruptcy estate as of the Petition Date, even though the Action was not listed in the schedules, and property that is neither abandoned nor administered remains property of the estate even after the case is closed. See 11 U.S.C. § 541 (property of estate) and § 554(d) (property not abandoned or administered remains property of estate); Pace v. Battley (In re Pace), 146 B.R. 562, 564-66 (9th Cir. BAP 1992), aff'd, 17 F.3d 395 (9th Cir.1994) (table) (unscheduled property remains in estate after case is closed)."). "Once an asset becomes part of the bankruptcy estate, all rights held by the debtor in the asset are extinguished unless the asset is abandoned back to the debtor pursuant to § 554 of the Bankruptcy Code. See 11 U.S.C. § 554(a)-(c)." Parker v. Wendy's Int'l, Inc., 365 F.3d at 1272.
Under 11 U.S.C. § 704(1), the bankruptcy trustee has a duty on behalf of the creditors of the bankruptcy estate to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." The assets of the bankruptcy estateincluding legal claims held by the debtorbecome the responsibility of the bankruptcy trustee. See, e.g., Looney v. Hyundai Motor Mfg. Alabama, LLC, 330 F.Supp.2d 1289, 1292 (M.D.Ala. 2004) (explaining that "the duty imposed pursuant to 11 U.S.C. § 704(1) `compels a chapter 7 trustee to take over all nonexempt lawsuits of the debtor'" (quoting Travelers Indemnity Co. v. Griner (In re Griner), 240 B.R. 432, 436 (Bankr.S.D.Ala. 1999))). Consequently, once a bankruptcy petition has been filed, the bankruptcy trustee is the real party in interest to all nonexempt lawsuits that are part of the debtor's bankruptcy estate.
Our courts have recognized this aspect of bankruptcy law on several occasions. "`"`It is well settled that the right to pursue causes of action formerly belonging to the debtora form of property "under the Bankruptcy Code"vests in the trustee for the benefit of the estate.'"'" Ex parte Moore, 793 So.2d 762, 764 (Ala.2000) (quoting Cooks v. Jim Walter Homes, Inc., 695 So.2d 19, 21 (Ala.Civ.App.1996), quoting other cases).
"Under 11 U.S.C. § 541(a)(1), commencement of a bankruptcy action creates an estate consisting of `all legal or equitable interests of the debtor in property as of the commencement of the case.' This includes causes of action owned by the debtor. In re Louden, 106 B.R. 109 (E.D.Ky.1989). Until the property is listed as exempt, it has no exempt status and the bankruptcy trustee has exclusive authority to assert any cause of action that is the property of the estate. Ball v. Nationscredit Fin. Serv. Corp., 207 B.R. 869 (N.D.Ill.1997)."
Crider v. Misty Acres, Inc., 893 So.2d 1165, 1169 (Ala.Civ.App.2004).
"A number of cases have held that once a proceeding has been initiated under Chapter 7 of the Bankruptcy Code involving a debtor, the trustee in bankruptcy becomes the real party in interest *491 with respect to lawsuits upon causes of action held by the debtor. See, e.g., Bickford v. Ponce de Leon Care Ctr., 918 F.Supp. 377 (M.D.Fla.1996); Ex parte Moore, 793 So.2d 762 (Ala.2000) (distinguishing Chapter 13 cases, although using `standing' terminology). However, there are two significant exceptions recognized to that principle of law: if the trustee abandons a cause of action, or if the bankruptcy court authorizes the debtor to maintain it in lieu of the trustee, the real party in interest is the debtor and not the trustee."
Battle v. Alpha Chem. & Paper Co., 770 So.2d 626, 634 (Ala.Civ.App.2000) (emphasis omitted); see also Ex parte Sterilite Corp. of Alabama, 837 So.2d 815, 819 (Ala. 2002) (quoting Battle with approval).
It is undisputed that Brooks's FELA claim against Norfolk Southern has not been exempted from his bankruptcy estate, and Hamm, the trustee of the estate, has made it clear both in the motion to substitute before the trial court and on appeal that he has no intention of abandoning the action. Therefore, Hamm is the real party in interest to Brooks's claim.
Norfolk Southern contends that Verneuille v. Buchanan Lumber of Mobile, Inc., 914 So.2d 822, 824-25 (Ala.2005), demonstrates that, even if Hamm is the real party in interest, the trial court did not exceed its discretion in denying the motion for substitution in this case. The facts in Verneuille are similar to those in the instant appeal in that, in Verneuille, the trial court entered a summary judgment on the basis of judicial estoppel because Charles Byrd had initially failed to amend his bankruptcy schedules after he filed a personal-injury complaint. The trial court then denied Byrd's motion to alter, amend, or vacate the summary judgment. Byrd's bankruptcy trustee, Joseph Verneuille, appealed the trial court's decision. This Court affirmed the trial court's ruling, finding that "the trial court did not exceed its discretion in denying Byrd's postjudgment motion." 914 So.2d at 825.
Though Verneuille shares some similarities with the instant appeal, it differs in at least one key respect. The bankruptcy trustee in Verneuille couched Byrd's postjudgment motion as a motion to substitute Verneuille as the real party in interest, but this Court explicitly disagreed with that characterization.
"That argument ... overstates the substance of Byrd's motion. The motion requested only that Verneuille be allowed a `sufficient opportunity' to `determine whether to prosecute' the claim in the event he should `elect to do so.' (Emphasis added.) Verneuille had filed nothing in the case when the trial court denied Byrd's motion on October 7, 2004. Thus, both when the postjudgment motion was filed and when it was denied, the record was by no means clear as to whenif everVerneuille would appear in the case. We will not place a trial court `"in error on matters which the record reveals it neither ruled upon nor was presented the opportunity to rule upon.'" J.K. v. Lee County Dep't of Human Res., 668 So.2d 813, 817 (Ala.Civ.App.1995) (quoting Wilson v. State Dep't of Human Res., 527 So.2d 1322, 1324 (Ala.Civ.App.1988)) (emphasis added).
"Implicit in Verneuille's argument is that the trial court was required to hold the case in abeyance indefinitely, without a motion by Verneuille. He cites no authority for such a proposition. It is significant that the trial court did not rule on Byrd's postjudgment motion until 57 days after Verneuille was appointed as trustee. Under these facts, we cannot hold that the trial court exceeded *492 its discretion in denying Byrd's postjudgment motion."
914 So.2d at 824-25.
Thus, the issue in Verneuille was the bankruptcy trustee's failure to appear in the case and Byrd's postjudgment motion failing to give the trial court any indication that an appearance would ever be made. Conversely, in the instant case, Brooks's postjudgment motion expressly requested that Hamm be substituted for Brooks at that time as the real party in interest and it indicated that Hamm intended to proceed with the prosecution of the FELA action, including hiring Brooks's counsel as the attorney for the case. Unlike Verneuille, Brooks was not asking for an indefinite suspension of the case; he was asking for Hamm to be immediately substituted as the real party in interest so that the FELA action could proceed.
Given that Brooks's FELA claim is part of the bankruptcy estate, that the Bankruptcy Code clearly provides that the bankruptcy trustee assumes exclusive authority over property in the bankruptcy estate upon the filing of the bankruptcy petition, and that Brooks and Hamm properly moved to substitute Hamm as the real party in interest to the FELA action once Brooks's bankruptcy estate was reopened, the trial court exceeded its discretion in refusing to substitute Hamm as the real party in interest to Brooks's FELA action.
In reaching the foregoing conclusion, we have considered whether there was some ground upon which, as a matter of law, the trial court's judgment should be affirmed other than the ground argued by Norfolk Southern. "This Court may affirm a trial court's judgment on `any valid legal ground,'" General Motors Corp. v. Stokes Chevrolet, 885 So.2d 119, 124 (Ala. 2003), subject, of course, to due-process constraints, see Liberty Nat'l Life Ins. Co. v. University of Alabama Health Servs. Found., 881 So.2d 1013, 1020 (Ala.2003).
As noted, Rule 17(a), Ala. R. Civ. P., requires that "[e]very action shall be prosecuted in the name of the real party in interest." It further provides:
"No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest. . . ."
Taken together, these two provisions form the basis for a trial court to decline to consider, after the aforesaid "reasonable time" has come and gone, an action that is not being prosecuted in the name of the real party in interest. See 6A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 1555 (2d ed. 1990) ("[I]f the real party in interest is not joined or substituted within a reasonable time, the court should dismiss the suit," albeit in a manner that does not, in and of itself, "bar any action that might subsequently be brought by the proper party."). We therefore turn to the issue whether the trial court's summary judgment and, more specifically, its denial of the postjudgment motion seeking the substitution of Hamm, as bankruptcy trustee, as the real party in interest should be upheld on the alternative ground that the motion for substitution was not filed within a "reasonable time."
As a threshold matter, it should be observed that a real-party-in-interest objection is waivable. Federal Practice & Procedure at § 1554 (explaining that a defendant "may voluntarily or involuntarily waive any objection that he might have had to plaintiff's status as the real party in interest"). As noted, Rule 17(a) contemplates that an action shall not be dismissed *493 based on that rule until there has been an "objection" by the opposing party and a "reasonable time" has passed following that objection to allow for substitution. We have carefully reviewed the filings in the trial court, and we see no objection of the nature contemplated by Rule 17(a) to Brooks's prosecution of the action, i.e., on the ground that he was not the real party in interest. Specifically, the summary-judgment motion filed by Norfolk Southern contains no argument or "objection" on the basis that Brooks was not the real party in interest. That motion is limited to an argument that contemplates Brooks as the plaintiff and asks the trial court to apply the principle of judicial estoppel to Brooks. There is no objection to the prosecution of the action by Brooks on the ground that he is not the real party in interest; there is only an argument that he should not be allowed to prosecute the action because he is judicially estopped from doing so.[3]
Nor was there any mention of Rule 17 or concerns as to whether Brooks was the real party in interest in the supplemental letter brief filed by Norfolk Southern shortly before the trial court ruled on its motion for summary judgment. As was true of the original summary-judgment motion itself, the only argument in that letter brief is one to the effect that the principle of judicial estoppel should apply to prevent Brooks from prosecuting the FELA action.
In sum, it was not until the motion to substitute Hamm for Brooks as the real party in interest that the real-party-in-interest issue was injected into the trial court proceedings. It therefore cannot be said that the trial court could have upheld, or that we, as an appellate court, may uphold, the denial of the motion for substitution on the ground that it was not made within a "reasonable time" after the opposing party had raised an "objection" under Rule 17(a).[4]

C. Judicial Estoppel
Brooks and Hamm contend that because Hamm is the real party interest and because he was not aware of the existence of the FELA action until the bankruptcy schedules were amended following the reopening *494 of Brooks's bankruptcy estate, Hamm cannot be barred by the doctrine of judicial estoppel from pursuing the claim. Norfolk Southern responds that fairness requires that the doctrine of judicial estoppel be applied because of Brooks's delay in amending his bankruptcy schedules to include his claim against Norfolk Southern.
"In Ex parte First Alabama Bank, [883 So.2d 1236 (Ala.2003),] this Court `embrace[d] the factors set forth in New Hampshire v. Maine [, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001),] and join[ed] the mainstream of jurisprudence in dealing with the doctrine of judicial estoppel.'" Middleton v. Caterpillar Indus., Inc., 979 So.2d 53, 60 (Ala.2007) (quoting Ex parte First Alabama Bank, 883 So.2d at 1246). For judicial estoppel to apply (1) "a party's later position must be `clearly inconsistent' with its earlier position"; (2) the party must have been successful in the prior proceeding "so that judicial acceptance of an inconsistent position in a later proceeding would create `the perception that either the first or second court was misled'"; and (3) "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." New Hampshire, 532 U.S. at 750-51, 121 S.Ct. 1808 (citations omitted); see Middleton, 979 So.2d at 60-61; Ex parte First Alabama Bank, 883 So.2d at 1244-45. This Court has stated that "[t]he purpose of judicial estoppel is `"to protect the integrity of the judicial process" by "prohibiting parties from deliberately changing positions according to the exigencies of the moment."'" Middleton, 979 So.2d at 59 (quoting New Hampshire, 532 U.S. at 749-50, 121 S.Ct. 1808; other citation omitted).
It is evident that the trial court properly applied the doctrine of judicial estoppel to Brooks when it entered the summary judgment against him. After he filed the FELA action, Brooks failed to amend his bankruptcy schedules to reflect his FELA claim as a potential asset, and thereafter he received a "no-assets" discharge in the bankruptcy proceeding. Despite this outcome, Brooks continued to prosecute the FELA action. Thus, Brooks had taken clearly inconsistent positions; he was successful in his bankruptcy proceeding; and he potentially could have received the unfair advantage of a possible $750,000 "windfall" if he succeeded in his claim against Norfolk Southern.
The fact that the trial court properly applied the doctrine of judicial estoppel to Brooks, however, does not mean that that doctrine necessarily is applicable to Hamm in his capacity as bankruptcy trustee. Following the entry of the summary judgment against Brooks, the bankruptcy case was reopened, the bankruptcy schedules were amended to include the FELA claim, and the bankruptcy trustee moved to be substituted as the real party in interest in the trial court. The trustee has never taken inconsistent positions with regard to the FELA claim because he did not know about the claim until the bankruptcy schedules were amended to reflect the existence of the claim as a potential asset to the estate. Therefore, Hamm cannot be judicially estopped from pursuing the claim.
Norfolk Southern contends that Barger v. City of Cartersville, Ga., 348 F.3d 1289 (11th Cir.2003), demonstrates that the doctrine of judicial estoppel should apply even when the bankruptcy trustee is eventually substituted as the real party in interest. In Barger, an employee sued an employer in federal court alleging discrimination. During the pendency of the action, Barger filed a petition in bankruptcy. After Barger had obtained a bankruptcy discharge, the employer filed a motion for a summary *495 judgment, seeking dismissal of the discrimination claim on the basis of judicial estoppel. Even though Barger then reopened the bankruptcy case and amended her schedule to reflect the discrimination claim, the district court entered a summary judgment against Barger.
We first pause to note in relation to the discussion in Part B, supra, that the United States Court of Appeals for the Eleventh Circuit allowed the bankruptcy trustee to be substituted as the real party in interest while the case was on appeal from the summary judgment. Barger, 348 F.3d at 1292-93.
Insofar as the issue of judicial estoppel itself, however, the Eleventh Circuit Court of Appeals concluded that the district court had properly applied judicial estoppel to Barger's discrimination claim. Relying heavily on Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282 (11th Cir.2002), the Court of Appeals concluded that Barger's knowledge of her discrimination cause of action at the time she filed her bankruptcy petition and her failure to disclose the claim to the bankruptcy court demonstrated that she had intentionally manipulated the judicial system to her benefit. The fact that Barger later reopened her bankruptcy proceeding did not impress the Barger court.
"Barger's attempt to reopen the bankruptcy estate to include her discrimination claim hardly casts her in the good light she would like. She only sought to reopen the bankruptcy estate after the defendants moved the district court to enter summary judgment against her on judicial estoppel grounds. `Allowing [a debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor's assets.' Burnes at 1288 (citation omitted). As such, Barger's disclosure upon re-opening the bankruptcy estate deserves no favor."
Barger, 348 F.3d at 1297.
The analysis in Barger fails to explain whyif "the Trustee is the real party in interest and it has exclusive standing to assert any discrimination claims," Barger, 348 F.3d at 1292, and the trustee did not know of the claim or know that it had any monetary valuethe bankruptcy trustee should be held responsible for the actions of the debtor. Indeed, a result such as the one in Barger punishes not just the debtor, but the debtor's innocent creditors.
"Viewed as a two-party dispute, imposition of judicial estoppel may be unremarkable, but the typical bankruptcy-related flaw in such analysis is the failure to take into account that an unscheduled cause of action is not the debtor's property and that the victims are the debtor's creditors. The equitable balance compels consideration of whether the economic consequences of a judicial estoppel are borne by third parties."
An-Tze Cheng v. K & S Diversified Invs., Inc. (In re An-Tze Cheng), 308 B.R. 448, 460 (B.A.P. 9th Cir. 2004).
As in Barger and the present case, in Losacano v. Deaf & Hearing Connection of Tampa Bay, Inc., 988 So.2d 66 (Fla. Dist.Ct.App.2008), the trial court was asked to enter a summary judgment against a bankruptcy debtor on the ground of judicial estoppel because the debtor had obtained a discharge from bankruptcy without listing the action in question as an asset of the bankruptcy estate. The trial court entered the summary judgment on the ground of judicial estoppel. After *496 summary judgment was entered, indeed while the case was on appeal, the bankruptcy trustee asked to be allowed to proceed as the primary appellant. In relation to the issue of substitution discussed in Part B, supra, we note that the court of appeal agreed. 988 So.2d at 69.
The appeal that the Florida District Court of Appeal then proceeded to resolve was an appeal of the same issue presented here: Should judicial estoppel that is applicable to the debtor prevent the bankruptcy trustee from prosecuting the action for the benefit of the bankruptcy creditors? The court answered in the negative. Criticizing the decision in Barger, the court noted:
"[The] discussion [of judicial estoppel in Barger] seems odd because . . . the Eleventh Circuit had already concluded that the claims had been transferred to the Trustee. Ms. Barger's actions could not and did not prevent the trustee from pursuing the claims possessed by the trustee. . . ."
Losacano, 988 So.2d at 69-70. The court concluded that "the action in this case was owned by. . . [the] trustee of the bankruptcy estate and could not be dismissed on any theory of judicial estoppel" applicable to the debtor. 988 So.2d at 70.
The oversights of the Barger analysis were not repeated in a case decided by that same court approximately a year after Barger was decided. In Parker v. Wendy's International, Inc., 365 F.3d at 1271-72, the Eleventh Circuit Court of Appeals explained:
"Trustee Reynolds concedes that Parker [the debtor] took inconsistent positions in bankruptcy court and district court. Reynolds argues that Parker's inconsistent statements should not be attributed to him and that, even if judicial estoppel would bar Parker, it should not bar Reynolds from pursuing this claim on behalf of Parker's creditors. Reynolds contends that judicial estoppel should not apply to him, as bankruptcy trustee, because he did not know of the discrimination claim during the bankruptcy proceedings and, therefore, did not take inconsistent positions in the courts. Moreover, Reynolds posits that applying judicial estoppel to him would not serve the policy of encouraging honest disclosure to the courts because Reynolds was never dishonest with the courts.
". . . .
"In this case, Parker's discrimination claim became an asset of the bankruptcy estate when she filed her petition. Reynolds, as trustee, then became the real party in interest in Parker's discrimination suit. He has never abandoned Parker's discrimination claim and he never took an inconsistent position under oath with regard to this claim. Thus, Reynolds cannot now be judicially estopped from pursuing it."[5]
*497 The Florida District Court of Appeals noted in Losacano that "Barger was further criticized or limited in In re Moore, 312 B.R. 902 (Bankr.N.D.Ala.2004); Baxley v. Pediatric Services of America, Inc., 147 Fed.Appx. 59 (11th Cir.2005) (unpublished opinion); and Wheeler v. Florida Department of Corrections, (M.D.Fla. Aug. 9, 2006) [not reported in F.Supp.2d]. See also Cheng v. Diversified Invs., Inc. (In re An-Tze Cheng), 308 B.R. 448, 460 (9th Cir. BAP 2004)." 988 So.2d at 70. See also In re Rochester, 308 B.R. 596, 611 (Bankr.N.D.Ga.2004) (relying on Parker in concluding that "equity favors allowing the trustee to pursue [the Debtor's] claim").
The implication of Parker is that the Barger court mistakenly applied the doctrine of judicial estoppel against an innocent bankruptcy trustee in a case involving a debtor's failure to add claims to the bankruptcy schedules. As one bankruptcy court succinctly summarized Parker and its progeny:
"The only way the proper party can be brought into the action is to reopen the bankruptcy case to see if the trustee wishes to intervene. If the case is reopened and the trustee intervenes, then under [Parker], judicial estoppel will generally not apply. The exception might be if the trustee recovered more than the amount necessary to satisfy all creditors. In that event, the defendants could invoke judicial estoppel to try to limit any monetary recovery to the amount needed to satisfy creditors and the trustee's expenses."
In re Upshur, 317 B.R. 446, 453 (Bankr. N.D.Ga.2004).
Based on the foregoing, we conclude that Parker embodies a better understanding of the doctrine of judicial estoppel than Barger as it relates to a debtor's failure to disclose in its bankruptcy schedules claims that are unknown to the bankruptcy trustee. Imposing the doctrine of judicial estoppel on an innocent bankruptcy trustee, which, in turn, punishes innocent creditors for the mistakes of a debtor, does not further the purpose of protecting the integrity of the judicial process. See generally Jinright v. Paulk, 758 So.2d 553, 560 (Ala.2000) (expressing concern about applying the doctrine of judicial estoppel in a manner that punishes innocent creditors of the debtor). Accordingly, the trial court erred in denying the postjudgment motion and preventing Hamm from pursuing Brooks's claim against Norfolk Southern for the benefit of the bankruptcy estate.
Although we reverse the judgment of the trial court as it relates to Hamm in his capacity as bankruptcy trustee, the concerns expressed in Barger as to the necessary disincentive to prevent a debtor from not making a full disclosure of assets in a bankruptcy proceeding persist as to Brooks:
"`Allowing [a debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor's assets.' Burnes at 1288 (citation omitted)."
Barger, 348 F.3d at 1297.
Brooks clearly knew of his cause of action against Norfolk Southern during the *498 pendency of his bankruptcy proceeding and therefore well within the time frame within which the law obligated him to amend his schedule of assets so as to include that claim. See Jinright, 758 So.2d at 559 (noting that among the questions of fact essential to a determination of the applicability of the doctrine of judicial estoppel is "whether a debtor who is engaged in bankruptcy proceedings knew or should have known about claims or causes of action that should be disclosed as assets"). Moreover, as Ex parte First Alabama explains, the doctrine of judicial estoppel concerns "the relationship between the litigant and the judicial system, as opposed to the relationship between the parties to the prior litigation." 883 So.2d at 1245. "`The doctrine of judicial estoppel [therefore] "applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted."'" 883 So.2d at 1241 (quoting Jinright, 758 So.2d at 555). "`Judicial estoppel... strives to preserve the sanctity of the oath and protect the integrity of the judicial process. Reliance is not a factor because any inconsistent statement violates the sanctity of the oath and injures the integrity of the judicial process, whether or not some party relied on the first statement. The inconsistency itself damages "public confidence in the purity ... of judicial proceedings."'" 883 So.2d at 1244 (quoting Rand G. Boyers, Precluding Inconsistent Statements: the Doctrine of Judicial Estoppel, 80 Nw. U.L.Rev. 1244, 1249-50 (1986)) (emphasis added). These concerns weigh more heavily in this case than they did in Middleton, which involved an ongoing Chapter 13 bankruptcy proceeding in which the schedule of assets could still be amended in the event of a successful outcome to the debtor's third-party action. Here, in contrast, the bankruptcy proceeding had ended without any amendment adding Brooks's claim against Norfolk Southern to the schedule of assets. Further, it is clear that, but for the summary-judgment motion filed by Norfolk Southern asserting the doctrine of judicial estoppel, Brooks would not have asked the bankruptcy court to exercise its discretion to reopen the bankruptcy proceeding. We therefore conclude that the trial court's determination that Brooks's claim against Norfolk Southern should be subject to judicial estoppel is due to be affirmed to the extent that the recovery on that claim might exceed the amount necessary to satisfy the claims of creditors and to pay any expenses related to reopening the bankruptcy proceeding. See Parker v. Wendy's Int'l, Inc., 365 F.3d at 1273 n. 4 ("Moreover, in the unlikely scenario where the trustee would recover more than an amount that would satisfy all creditors and the costs and fees incurred, then, perhaps judicial estoppel could be invoked by the defendant to limit any recovery to only that amount and prevent an undeserved windfall from devolving on the non-disclosing debtor."); In re Upshur, 317 B.R. at 453 (noting that, "if the trustee recovered more than the amount necessary to satisfy all creditors . . ., the defendants could invoke judicial estoppel to try to limit any monetary recovery to the amount needed to satisfy creditors and the trustee's expenses").

IV. Conclusion
Based on the foregoing analysis, we deny Norfolk Southern's motion to dismiss the appeal or, in the alternative, to strike Hamm as a party to the appeal, we reverse the summary judgment in favor of Norfolk Southern to the extent it barred Hamm, as the real party in interest, from pursuing Brooks's claim against Norfolk Southern. The trial court is directed to enter an order allowing Hamm to intervene as the real party in interest and to pursue Brooks's claim against Norfolk Southern *499 for a recovery up to the amount necessary to pay the claims of Brooks's creditors and expenses associated with the related bankruptcy proceeding. The trial court's judgment is affirmed to the extent that it recognizes that Brooks is judicially estopped from pursuing any claim against Norfolk Southern beyond the foregoing.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
COBB, C.J., and WOODALL, STUART, SMITH, BOLIN, PARKER, and SHAW, JJ., concur.
LYONS, J., concurs specially.
LYONS, Justice (concurring specially).
I concur fully in the main opinion. I write specially to address subject-matter jurisdiction. Although the parties have not raised the issue, this Court has the inherent power to address it ex mero motu. Ex parte V.S., 918 So.2d 908, 912 (Ala.2005). I am able to concur in the main opinion because I conclude that the issue should be resolved in favor of finding jurisdiction. I write specially to condemn loose usage of the term "standing."
Standing implicates subject-matter jurisdiction. Riley v. Pate, 3 So.3d 835, 838 (Ala.2008); State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala. 1999). Imprecision in labeling a party's inability to proceed as a standing problem unnecessarily expands the universe of cases lacking in subject-matter jurisdiction.
Most of a debtor's possessions become property of the bankruptcy estate upon the filing of a bankruptcy petition. See 11 U.S.C. § 541. The right to bring a post-discharge action based on a pre-bankruptcy claim exists only when the trustee abandons the claims pursuant to 11 U.S.C. § 554. In the absence of an abandonment of the FELA cause of action by Daniel G. Hamm, Leo Paul Brooks was not the real party in interest when he commenced the post-discharge action against Norfolk Southern Railway Company.
Rule 17(a), Ala. R. Civ. P., requires that an action be brought in the name of the real party in interest. It further provides:
"No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."
In An-Tze Cheng v. K & S Diversified Investments, Inc. (In re An-Tze Cheng), 308 B.R. 448, 461 (B.A.P. 9th Cir. 2004), the court stated: "The consequence is that, once the bankruptcy case is filed, the debtor lacks standing because the trustee owns the cause of action." (Emphasis added.) If the problem is truly an issue of standing, then subsequent efforts to cure the defect are for naught. See Cadle Co. v. Shabani, 4 So.3d 460, 462-63 (Ala.2008):
"Perhaps the trial court and the parties assumed that the jurisdictional defect created by Cadle's lack of standing to commence this ejectment action was cured by the pleading purporting to amend the complaint to add additional parties. If so, they were mistaken. Standing is `"`[t]he requisite personal interest that must exist at the commencement of the litigation.'"' Pharmacia Corp. v. Suggs, 932 So.2d 95, 98 (Ala.2005) (quoting In re Allison G., 276 Conn. 146, 156, 883 A.2d 1226, 1231 (2005), quoting in turn H. Monaghan, Constitutional Adjudication: The Who *500 and When, 82 Yale L.J. 1363, 1384 (1973))."
Rule 17(a) allows an action to proceed after an objection is made based on the absence of the real party in interest if curative steps are taken. Obviously, an absence of a real party in interest does not implicate subject-matter jurisdiction or the sole remedy would be dismissal, as opposed to countenancing curative measures. If we allow instances of the want of a real party in interest to be swallowed up by an erroneously expansive definition of standing, we will effectively eliminate any field of operation for the aforementioned feature of Rule 17(a) allowing the defect to be cured.
Standing is properly limited to circumstances stemming from lack of justiciability. A plaintiff must be so situated that he or she will bring the requisite adverseness to the proceeding. A plaintiff must also have a direct stake in the outcome so as to prevent litigation, initiated by an interested bystander with an agenda, having an adverse impact on those whose rights are directly implicated. See Diamond v. Charles, 476 U.S. 54, 61-62, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986).
Much of the precedent in the area of standing comes from federal courts subject to the case-or-controversy requirement of Article III of the United States Constitution. Of course, we do not have a case-or-controversy requirement in the Alabama Constitution of 1901, but our concepts of justiciability are not substantially dissimilar. See Pharmacia Corp. v. Suggs, 932 So.2d 95 (Ala.2005), where this Court, after noting the absence of a case-or-controversy requirement in our Constitution, observed:
"We have construed Art. VI, § 139, Ala. Const, of 1901 (as amended by amend, no. 328, § 6.01, vesting the judicial power in the Unified Judicial System), to vest this Court `with a limited judicial power that entails the special competence to decide discrete cases and controversies involving particular parties and specific facts.' Alabama Power Co. v. Citizens of Alabama, 740 So.2d 371, 381 (Ala.1999). See also Copeland v. Jefferson County, 284 Ala. 558, 226 So.2d 385 (1969) (courts decide only concrete controversies between adverse parties)."
932 So.2d at 97 n. 4.
If we limit standing to issues of justiciability as defined above, thereby significantly reducing the occasion for concerns over subject-matter jurisdiction, the problem in this case is properly viewed as an issue of real party in interest for which Rule 17(a), Ala. R. Civ. P., offers a remedy. In this proceeding we have no concerns over adverseness nor do we have a meddlesome bystander at the helm as of the commencement of the action. Viewed from this perspective, no problem of absence of subject-matter jurisdiction is presented.
NOTES
[1] Alexander states that in a telephone conference with the trial court and Norfolk Southern he asked for and received a third extension. No record of said extension is noted in the record; Norfolk Southern makes no mention of a third extension.
[2] Alexander states that this was "a poor choice of words" by Cavanaugh and that what Cavanaugh "meant to write is that [Brooks] mistakenly failed to amend his schedules after receiving knowledge that a FELA claim had arisen after he filed his bankruptcy petition."
[3] Even if an issue as to Brooks's status as a real party in interest had been raised by Norfolk Southern at some point during the proceedings in the trial court, the question whether a "reasonable time" would have passed and whether the action should have been dismissed at that juncture for a failure of substitution are questions as to which a trial court is to exercise discretion based on its assessment of the type of case and its facts and the procedural history of the case. Federal Practice & Procedure at § 1555 ("What constitutes a reasonable time is a matter of judicial discretion and will depend upon the facts of each case."). We therefore do not intend to suggest that, even if an objection to Brooks's not being the real party in interest had been made in the trial court, we, as an appellate court, could address these questions in the first instance as a matter of law.
[4] It might also be questioned whether the fact that the attempt to substitute Hamm as the real party in interest comes too late for the reason that it comes after the trial court's entry of summary judgment. For the same reason, however, that the doctrine of judicial estoppel applicable to the debtor does not prevent the bankruptcy trustee from prosecuting the underlying claim for the benefit of the bankruptcy creditors, see discussion in Part C, infra, there is no reason to foreclose the bankruptcy trustee from seeking to intervene as the real party in interest after a summary judgment has been entered, at least where the trustee was not aware of the claim before the entry of the summary judgment. As noted in the discussion that follows, this has been the approach of courts confronted with a request for substitution of a bankruptcy trustee after a court has entered a summary judgment or judgment on the pleadings against the debtor on the ground of judicial estoppel. See Part C, infra.
[5] The Parker court further noted:

"Although general bankruptcy law establishes that the trustee does not have any more rights than the debtor has. Bank of Marin v. England, 385 U.S. 99, 101, 87 S.Ct. 274, 276, 17 L.Ed.2d 197 (1966) (`The trustee succeeds only to such rights as the bankrupt possessed; and the trustee is subject to all claims and defenses which might have been asserted against the bankrupt but for the filing of the petition.'); In re Halabi, 184 F.3d 1335, 1337 (11th Cir.1999), any post-petition conduct by Parker, including failure to disclose an asset, does not relate to the merits of the discrimination claim. This is because the instant the bankruptcy petition was filed, Parker's claim against Wendy's became property of the estate under section 541 and Reynolds became the real party in interest. At that point, the debtor ceased to have an interest in the discrimination claim, unless and until the trustee abandoned it. Both Bank of Marin and In re Halabi are readily distinguishable since those cases deal with pre-petition defenses and counterclaims to a cause of action that would have been applicable to the debtor had no bankruptcy case been filed."
Parker, 365 F.3d at 1272 n. 3.