BRYAN, Justice
(dissenting).
I respectfully dissent. Act No. 1619, Ala. Acts 1971 (“the Act”), provides that any party “feeling aggrieved” by a decision of the Civil Service Board of the City of Florence (“the CSB”) may appeal the decision to the circuit court. Citing the most recent edition of Black’s Law Dictionary, the main opinion concludes that only a party whose legal rights have been adversely affected by such a decision may appeal under the Act; that is, the main opinion uses a “legal-right” test to determine whether William T. Ezell is “aggrieved” by the CSB’s decision and, thus, whether he has standing to appeal. “Under this approach ... standing to challenge official action requires injury to a ‘legal right’ of the plaintiff.” 13A Charles Alan Wright et al., Federal Practice and Procedure § 3531.1 (3d ed.2008). The legal-right test was prevalent in federal courts in the 1930s, but was eventually replaced by other tests. See 3 Richard J. Pierce, Jr., Administrative Law Treatise § 16.1 — .3 (5th ed.2010). Under the newer prevailing standards, Ezell clearly would have the right to appeal the CSB’s decision.
Professor Pierce explains why the legal-right test fell out of favor:
“The legal right test was criticized on many grounds. See, e.g., Davis, The Liberalized Law of Standing, 37 U. Chi. *461 L.Rev. 450 (1970). Perhaps the most telling criticism was based on its confusion of the issue of access to the courts with the issue of whether a party should prevail on the merits of a dispute. Under the legal right test, a court was required to determine whether the petitioner’s claim had merit in order to decide whether the petitioner was entitled to have the merits of its case considered by the court. This circular reasoning process is unnecessary to the determination of the threshold question of access to judicial review, and it can force a court to determine the merits of a claim at such an early stage that the court does not focus enough attention on the merits. Thus, considering the merits of a party’s claim as part of the process of determining whether the party has standing to assert that claim invites poorly reasoned summary judicial disposition of the merits of the claim.”
Pierce, supra, § 16.2, at 1410. See also Wright, supra, § 3531.1 (“There were thus two ways in which the legal-right formula could be found defective. One was its capacity to limit standing; the other was its capacity to confuse substantive and remedial issues with standing.”). By conflating the merits of Ezell’s appeal with the standing to appeal, the main opinion illustrates one of the shortcomings of the legal-right test.
In 1940, the United States Supreme Court signaled a shift away from the legal-right test with FCC v. Sanders Brothers Radio Station, 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869 (1940), a decision that views the term “aggrieved” much more broadly than does the main opinion here. Sanders Brothers owned a radio station, and its competitor applied to the FCC for a license to operate a radio station nearby. The FCC granted the license despite the contention of Sanders Brothers that a new station would harm Sanders Brothers economically. The relevant statute granted the right to judicial review of the FCC’s licensing decision to any person “aggrieved or whose interests were adversely affected” by the decision. 309 U.S. at 476-77. The Supreme Court concluded that Sanders Brothers did not have a “right” to be free from economic harm caused by competition. However, despite the fact that the FCC’s decision had not violated a legal right of Sanders Brothers, the Supreme Court held that Sanders Brothers had standing to challenge the decision under the express terms of the statute. In sum, “while Sanders Brothers could not argue on the merits that grant of the license impermissibly caused it economic harm, it could use that economic harm as the basis for standing.” Pierce, supra, § 16.2, at 1411. For the next 30 years, the Supreme Court applied this permissive-standing test when the relevant statute granted judicial review for anyone “adversely affected or aggrieved” (while applying the narrow legal-right test in the absence of such statutory language). Id. § 16.2, at 1412. Here, the Act grants the right to judicial review to any party “aggrieved” by the decision of the CSB. When the Act was passed in 1971, the word “aggrieved,” at least in this context, had an established meaning broader than the meaning given to it by the main opinion.
In 1970, one year before the Act was passed, the United States Supreme Court continued the trend toward inclusiveness in standing with Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.(Ed.2d 184 (1970). That case concerned the scope of judicial review under the federal Administrative Procedure Act, which grants judicial review to “[a] person suffering legal wrong because of an agency action, or adversely affected or aggrieved by agency action within the meaning of a *462 relevant statute.” 5 U.S.C. § 702. In Data Processing, the Court stated a two-part test that built on the inclusive approach in Sanders Brothers. A plaintiff challenging an administrative decision must establish (1) an “injury in fact, economic or otherwise,” caused by the decision and (2) that the interest, sought to be protected is “arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.” 397 U.S. at 152-53. The Court specifically rejected the legal-right, or “legal-interest” test, stating that that test goes to the merits, not to standing. Id. at 153. The Court concluded that the two-part test was satisfied in that case, noting that the first part was satisfied because the administrative decision would likely cause economic loss to the plaintiffs member firms. In short, the Court in Data Processing “unequivocally abandoned the legal right test,” Pierce, supra, § 16.3, at 1412, but the test continues to find occasional use in some jurisdictions, Wright, supra, § 3531.1. See also 3 Charles H. Koch, Jr., Administrative Law and Practice § 14.16 (2d ed.1997) (stating that “[ejven the most conservative view of standing in the federal system does not advocate the readoption of the ‘legal interest’ test” but noting that “some version” of the test may exist in some states).
Although we are not bound by the above cases, I find them persuasive in construing a statutory provision that allows, without further explanation, judicial review to one “aggrieved” by a decision of the CSB.[3] The legal-right test used by the main opinion merges concepts of standing with the merits and, for the most part, is a legal relic. Under the test stated in Data Processing, Ezell, as an “aggrieved” party, easily would have standing to challenge the CSB’s decision. By not receiving the promotion, Ezell suffered an economic injury, which is an injury in fact. Certainly the interest sought to be protected by Ezell, which relates directly to a personnel decision made by the CSB, is arguably within the zone of interests to be protected or regulated by the Act.
Further, I note that we could have easily found that Ezell was “aggrieved” by simply referencing an earlier edition of Black’s Law Dictionary instead of the most recent edition. When the Act was passed in 1971, the then current edition of Black’s defined an “aggrieved party” in part as “[o]ne whose legal right is invaded by an act complained of, or whose pecuniary interest is directly affected by a decree or judgment.” Black’s Law Dictionary 87 (4th ed.1968) (emphasis added). Reference to a “pecuniary” interest (which was a factor in both Sanders Brothers and Data Processing) continued to be part of the definition of “aggrieved party” through the 9th edition of Black’s published in 2009. In Birmingham Racing Commission v. Alabama Thoroughbred Ass’n, 775 So.2d 207 (Ala.Civ.App.1999), the Court of Civil used an earlier version of the definition in a situation similar to the present one. That court construed the undefined term “person aggrieved” in a statute providing for judicial review of decisions by a racing commission. That court quoted the 6th edition of Black’s, published in 1990, which *463 provided, in part, that an aggrieved party is one “whose pecuniary interest is directly and adversely affected.”
I conclude that Ezell has standing to challenge the CSB’s decision. Thus, I would not dismiss the appeal; instead, I would address the merits.

. I note that "[m]uch of the precedent in the area of standing comes from federal courts subject to the case-or-controversy requirement of Article III of the United States Constitution.” Hamm v. Norfolk S. Ry., 52 So.3d 484, 500 (Ala.2010) (Lyons, J., concurring specially). Insofar as the analysis in the federal cases cited above is grounded in the case- or-controversy requirement, I note that, although Alabama's Constitution does not have a case-or-controversy requirement, "our concepts of justiciability are not substantially dissimilar.” Id.