MURDOCK, Justice
(concurring in the rationale in part and concurring in the result).
I concur in the result reached by the main opinion and in part of the analysis by which it reaches that result. I write separately for three reasons. First, there are significant substantive questions concerning the statutory regulation of municipal gas districts suggested by this case, and in some instances raised by the parties, that I do not wish to be understood as implicitly addressed by my vote. Secondly, I write to explain the unique nature of this case that I believe makes appropriate the invocation of the concept of standing despite my view that our courts have overused this concept. Finally, although I conclude that the individual taxpayer plaintiffs lack standing, I do not do so based on the same rule of decision upon which the main opinion relies.
I find it necessary to briefly explain my understanding of the limited purpose of and the mechanics of the statutory scheme outlined in Ala.Code 1975, §§ 11-50-266 through -270, as made applicable to gas districts by § 11-50-399, Ala.Code 1975.
Article 12 of Chapter 50, Title 11, Ala. Code 1975, authorizes the creation of and governs the operation of municipal “gas districts.” See Ala.Code 1975, § 11-5-390 et seq. Section 11-50-399 restricts the ability of municipal gas districts to compete with other entities already engaged in the business of manufacturing, distributing, and/or selling natural gas and/or “manufactured gas” by adopting for application to such gas districts certain provisions of Article 8 of Chapter 50:
“All districts incorporated under the provisions of this article shall have all powers and be subject to all limitations with respect to the acquisition of competing gas systems and the duplication of existing privately owned gas systems to the same extent as boards under the provisions of Sections 11-50-266 through 11-50-270.”
The sole function of §§ 11-50-266 through 11-50-270[5] is to require any municipal gas district that wishes to compete with an existing producer or supplier of manufactured natural gas to pursue a regulatory process by which it gives the existing “owner” the opportunity, before being confronted with such competition, to sell all or part of its business assets to the gas district.
The first step in this process is the giving of notice to the owner that the gas district intends to compete with it. § 11— 50-266, Ala.Code 1975. Thereafter, §§ 11-50-267 through -270 provide for a multistep process by which the parties can *979 attempt to agree upon the terms and conditions of a sale or, failing that, can involve the Alabama Public Service Commission in determining such terms and conditions. If at any point along the way the owner communicates a decision by it not to engage in a sale, the process is at an end, and the gas district is free to begin competing against that owner. (So long as the owner continues to pursue the process, then so too must the gas district as a prerequisite to entering the owner’s market as a competitor.) See §§ 11-50-267, -268, and -270.
Whether the process described above even applies in the present case depends on whether the product at issue in this case, liquified petroleum gas or “LP gas,” is to be considered a “manufactured gas” within the meaning of the aforesaid statutory provisions. A valid question has been raised by the defendant, South Alabama Gas District (“SAG”), as to whether these provisions lend themselves to an affirmative answer to this question. (Section 11-5-396(18), for example, appears to addresses LP gas separately from other provisions in the statute. Also, LP gas is separately regulated by the Alabama LP Gas Board. See Ala.Code 1975, § 9-17-100 et seq.) On the other hand, it appears that SAG may have taken the position before the trial court, at least for purposes of the injunctive relief at issue, that LP gas is to be considered a manufactured gas. Given the grounds upon which this Court decides the appeal before us today, however, it is not necessary for us to decide in this appeal whether LP gas is a manufactured gas within the meaning of these statutes. Nor is it necessary for us to decide whether SAG conceded this issue for purposes of this appeal (or for purposes of any claims that remain pending in the trial court).
It also appears that a question exists as to whether the legislature intended with its enactment of Article 12 of Chapter 50 of Title 11, and the application to municipal gas districts of the procedures outlined in §§ 11-50-266 through -270, to provide existing owners such as Fletcher Smith Butane Co., Inc. (“Fletcher Smith”), with a private right of action in the courts of this state in the event a municipal gas district competes against it without first pursuing the process outlined in §§ 11-50-266 through -270.[6] Even if there exists a private judicial action by the owner of an existing gas business, a more substantial question has been raised in this case as to whether Alabama law recognizes a private cause of action by the individuals who have sued in their capacity as taxpayers in this case. These issues, however, were not presented in the trial court.
The legal question of the cognizability of an alleged cause of action under state law goes to the merits of a lawsuit asserting that cause of action rather than the subject-matter jurisdiction of the court to decide that legal question. See, e.g., Wyeth, Inc. v. Blue Cross & Blue Shield of Alabama, 42 So.3d 1216, 1219 and 1220 (Ala.2010) (“[0]ur courts too often have fallen into the trap of treating as an issue of *980 ‘standing’ that which is merely a failure to state a cognizable cause of action or legal theory, or a failure to satisfy the injury element of a cause of action.”; “[WJhether [the plaintiff] has seized upon a legal theory our law accepts is a cause-of-action issue, not a standing issue.”); Steele v. Federal Nat’l Mortg. Ass’n, 69 So.3d 89, 91 n. 2 (Ala.2010) (citing Wyeth, 42 So.3d at 1220, for the proposition that the appel-lee has “confused standing with failure to state a claim”); Hamm v. Norfolk Southern Ry., 52 So.3d 484, 499 (Ala.2010) (Lyons, J., concurring specially) (urging this Court to think of standing in “justicia-bility” terms); Ex parte McKinney, 87 So.3d 502, 512-13 (Ala.2011) (Murdock, J., dissenting) (citing 13A Charles Alan Wright et al., Federal Practice & Procedure § 3531 (3d ed.2008), for the proposition that “[o]ur courts too often have treated as a matter of subject-matter jurisdiction that which does not go to the fundamental authority of the courts to decide a case,” i.e., the fundamental authority of a court to decide both the legal and the factual issues presented by that case); see also Jerome A. Hoffman, The Malignant Mystique of “Standing”, 73 Ala. Lawyer 360 (2012). Such questions, not having been raised in the trial court, provide no basis for vacating the trial court’s order in this case.
Our inability to dispose of this case on the ground that the causes of action alleged are not cognizable under Alabama law leads me to consider the standing issue that is presented in the main opinion as the ground for disposing of the individual taxpayer plaintiffs’ claims against SAG. I wish to explain that I vote to concur in the result reached by this portion of the main opinion despite being of the view that the notion of “standing” recognized by federal courts in relation to “public law” cases, see generally, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), has no place in traditional civil actions. See Hoffman, supra; 6A Charles Alan Wright et al, Federal Practice & Procedure § 1542 (3d ed.2010) (noting the use of standing as a gate-keeping device “[i]n the realm of public law, when governmental action is attacked on the ground that it violates private rights or some constitutional principle”). I share the concern of many that the fascination and complexity of the doctrine of standing has led this and other courts on far too many occasions to view and resolve questions of private rights through the inappropriate invocation and application of distinctive public-law concepts.[7]
Although most of the actions addressed on a daily basis by this and other Alabama *981 courts involve established private causes of action with time-honored elements that, if proven, address the very concerns for which a separate consideration of “standing” is necessary in public-law cases, that is not the case here. Instead, the individual plaintiffs in this case have brought the relatively uncommon public-law case in which the concept of standing appears to be appropriate as a gate-keeping mechanism. Specifically, they have sued, not upon some established private cause of action in their favor, but to address SAG’s failure to fulfill its alleged obligations under a regulatory scheme intended for the protection of private entities (other than the individual plaintiffs themselves) engaged in providing a utility service and, ultimately, for the benefit of the public that relies upon that utility service. The defendant they have sued is a public corporation organized and controlled by municipal governments for the purpose of supplying this service to the public pursuant to authority granted by the legislature. The individual plaintiffs seek injunctive relief against this public corporation on the ground that its activities are prohibited by Alabama constitutional and statutory law. There is sufficient similarity, therefore, between this case and those public-law cases in which federal courts have relied upon the concept of standing to ensure the presence of a justiciable “case.” I therefore see no problem in applying the notion of standing to the claims of the individual plaintiffs.
That said, the individual plaintiffs have not shown that, as a result of the complained-of omissions of the defendant, they have suffered a sufficient present, or threatened, particularized injury to justify a conclusion that they have “standing.”
“The ‘gist of the question of standing’ is whether the party seeking relief has ‘alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.’ ”
Flast v. Cohen, 392 U.S. 83, 99, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) (quoting Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)).
Moreover, “the controversy” at issue here is over the enforcement of a regulatory scheme intended for the protection of existing suppliers of certain products and, indirectly, for the public that depends upon a reliable supply of those products. To *982 have standing, a plaintiff “must establish a nexus between [his or her] status and the precise nature of the ... infringement alleged.” Flast v. Cohen, 392 U.S. at 102. I specifically cannot conclude that this nexus requirement is met in the present case.[8]
In support of its conclusion that the individual plaintiffs lack standing, the main opinion relies upon the rule of decision articulated in Henson v. HealthSouth Medical Center, Inc., 891 So.2d 863, 868 (Ala.2004): “ ‘[A] taxpayer has standing to challenge a tax abatement conferred upon another taxpayer ... so long as the taxpayer can demonstrate a probable increase in his tax burden from the challenged activity.’” 138 So.3d at 973. I decline to express any -view as to the correctness generally, or for that matter the practicality, of this standard as a rule of decision.
Moreover, even if the rule of decision articulated in Henson is a correct and workable one insofar as it goes, I question whether it goes far enough. The test in Flast (or at least the test espoused in Flast) is not merely whether a plaintiff can demonstrate a nexus between his or her status and “the challenged activity,” but whether he or she can demonstrate a nexus between his or her status and “the controversy” over that activity. That is, there must be a nexus between the plaintiffs status and the “precise nature of the infringement” at issue. See Flast, 392 U.S. at 102. As explained above, I do not see such a nexus between the individual plaintiffs’ status as taxpayers and the regulatory purposes that their lawsuit, if successful, would vindicate.

. Based on the quoted provision, and for ease of discussion, I hereinafter will treat the references to waterworks boards in §§ 11-50-266 through 11-50-270 as references to gas districts.

. Perhaps a judicial action exists merely to enable a preexisting owner to force a gas district to engage in that process before the gas district is permitted to begin competing against the owner. In this case, the gas district never gave the notice allegedly required by § 11-50-266 to initiate that process. Nonetheless, the owner had actual knowledge of the gas district’s coming into its jurisdiction in 2003 and beginning to compete against it. Despite this fact, the owner did not object to this competition at that time, either through a challenge in the courts or before the Alabama Public Service Commission; instead, the owner allowed seven years to pass before filing the present action in 2010. We are not presented here with an argument that no private right of action is available to the owner based on a defense of waiver or laches.

. In many cases decided by this and other courts, the concerns raised have not involved matters that turn on the special justiciability concerns surrounding public-interest litigation; instead, such cases, both legally and practically, simply implicate such private-law concepts as cause of action, proof of damage (or some other element of the cause of action), real party in interest, capacity, necessary and indispensable parties, and like notions. As a leading treatise has noted,
"[i]n its flowering, subsequent withering, eventual revival, and occasionally complex application, the standing concept that there is a need to establish an entitlement to judicial action, separate from proof of the substantive merits of the claim advanced, has been largely a creature of twentieth century decisions of the federal courts. More importantly, it has been very much tied to litigation asserting the illegality of governmental action. The assertion may be that executive or administrative action goes beyond the limits of statutory authorization or constitutional limits, or that a statute exceeds constitutional limits. Claims oí private wrongdoing ordinarily are asserted by persons obviously having the enforceable interest, if anyone has; such problems as arise commonly are handled in terms of defining private causes of action or of identifying the real party in interest.
[[Image here]]
*981 "At times — and perhaps with increasing frequency — courts are tempted to move beyond the public-law arena, invoking Article III principles to address questions of private right.... [SJtanding decisions are invoked to address the existence of a cause of action, capacity, intervention, and even the procedural rights of bankrupts. Although such decisions may be aided by reference to standing doctrine, they involve other matters that do not turn on the special justiciability concerns surrounding public-interest litigation."
13A Charles Alan Wright et al., Federal Practice & Procedure § 3531 (3d ed.2008) (emphasis added). See also, e.g., K-B Trucking Co. v. Riss Int’l Corp., 763 F.2d 1148, 1154 n. 7 (10th Cir.1985):
“The standing question arises in the realm of public law, when governmental action is attacked on the ground that it violates private rights or some constitutional principle...."....' C. Wright, The Law of Federal Courts 452-53 n. 2 (4th ed.1983) (quoting Kent v. Northern California Regional Office of American Friends Service Committee, 497 F.2d 1325, 1329 (9th Cir.1974)).”
The use of standing to challenge the cogniz-ability of a cause of action or the proof of one of its elements (e.g., damage), raises the specter of unwarranted and unnecessary collateral challenges to the subject-matter jurisdiction of a court and to the finality and reliability of judgments in private-law actions.

. We do not have before us individual plaintiffs who seek relief because they are potential competitors or consumers for whose benefit was enacted the regulatory scheme that SAG did not follow.