REL: 11/07/2014

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

OCTOBER TERM, 2014-2015

————————————————

1130342

————————————————

**Ex parte Jackson Hospital & Clinic, Inc., et al.**

PETITION FOR WRIT OF MANDAMUS

(In re: Joanne Anderson

v.

Jackson Hospital & Clinic, Inc., et al)

————————————————

1130357

————————————————

**Ex parte Joanne Anderson**

PETITION FOR WRIT OF MANDAMUS

(In re: Joanne Anderson

**v.**

**Jackson Hospital & Clinic, Inc., et al)**

**(Montgomery Circuit Court, CV-12-1044)**

STUART, Justice.

Joanne Anderson sued Jackson Hospital and Clinic, Inc., Dr. Stephen K. Kwan, and Dr. Kwan's practice group, Capital Cardio-Thoracic, P.C. (hereinafter referred to collectively as "the Jackson Hospital defendants"), in the Montgomery Circuit Court, asserting medical-malpractice claims against them. Thereafter, the trial court granted a motion to substitute bankruptcy trustee Daniel G. Hamm for Anderson as the real party in interest pursuant to Rule 17, Ala. R. Civ. P., because Anderson had filed a petition for Chapter 7 bankruptcy pursuant to 11 U.S.C. § 701 et seq. after her medical-malpractice claim had accrued. The Jackson Hospital defendants subsequently petitioned this Court for permission to file an interlocutory appeal pursuant to Rule 5, Ala. R. App. P., arguing that Hamm's attempt to be substituted as the real party in interest was untimely under Rule 17; Anderson filed a separate Rule 5 petition for permission to appeal,

2

challenging the trial court's decision to remove her as the plaintiff in this case. We granted both petitions; however, as explained infra, we now treat the parties' petitions for permissive appeals as petitions for writs of mandamus, and we deny those petitions.

I.

On October 5, 2010, Anderson presented herself at the Jackson Hospital emergency room complaining of chest pain. Anderson had previously been diagnosed with coronary heart disease, and it was ultimately determined that she now needed coronary-artery-bypass surgery; on October 8, 2010, Dr. Kwan performed the procedure. Anderson thereafter had circulation issues in her feet; however, she was discharged from the hospital on October 25, 2010. Dr. Kwan conducted follow-up examinations with Anderson on November 2, 2010, and November 23, 2010, and on those visits she complained of continuing pain and circulation issues with her feet. During those examinations, Dr. Kwan determined that parts of Anderson's feet, including at least some toes, would likely have to be amputated; however, a final decision on the matter was delayed

3

because the swelling and blistering on Anderson's feet made it difficult to fully evaluate them.

On November 24, 2010, Anderson was again admitted to Jackson Hospital. On November 27, 2010, Dr. Kwan examined her again. He noted at that time that circulation in her legs was fine above the ankles, but that she had developed gangrene and that parts of her feet were dead with no circulation at all. After waiting for her overall condition to improve -- she was also experiencing kidney and respiratory failure at this time -- Dr. Kwan performed surgery on December 8, 2010, to amputate parts of Anderson's feet. During the course of the surgery, he ultimately determined that the feet were no longer viable and he accordingly performed bilateral below-the-knee amputations.

For all that appears, Anderson thereafter recovered to some extent and was discharged from Jackson Hospital. On November 8, 2011, Anderson filed a petition for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Middle District of Alabama. As part of that petition, Anderson completed schedules detailing her debts and her assets. Those schedules indicated that she had approximately

4

$28,000 of unsecured debt, consisting mostly of medical and consumer debt, and that she had no significant assets. Notably, she did not include among her assets any potential cause of action against the Jackson Hospital defendants, even though she was required by bankruptcy law to do so. See, e.g., Transouth Fin. Corp. v. Murry, 311 B.R. 99, 102 (M.D. Ala. 2004) ("One who files bankruptcy must disclose all of his assets, including causes of action, lawsuits, or potential lawsuits."). On March 1, 2012, the bankruptcy court granted Anderson a complete discharge of her debts, presumably putting an end to those bankruptcy proceedings.

On October 9, 2012, Anderson initiated the instant medical-malpractice action against the Jackson Hospital defendants. On approximately May 2, 2013, Anderson filed responses to interrogatories served upon her by the Jackson Hospital defendants in which she revealed that she had recently filed for bankruptcy. The Jackson Hospital defendants then obtained the records from Anderson's bankruptcy proceedings and, upon discovering that Anderson had not disclosed a potential cause of action against them in the list of assets filed with the bankruptcy court, prepared a

5

1130342, 1130357

motion asking the trial court to enter a summary judgment in their favor on judicial-estoppel grounds.  See, e.g., Luna v. Dominion Bank of Middle Tennessee, Inc., 631 So. 2d 917, 919 (Ala. 1993) ("The doctrine of judicial estoppel applies, where a debtor in bankruptcy proceedings fails to disclose any claim that may be presented in a nonbankruptcy contest, to estop the debtor from presenting the claim.").

On Friday, May 24, 2013, one of the attorneys for the Jackson Hospital defendants notified one of Anderson's attorneys of the substance of the summary-judgment motion he had prepared to file.  In an affidavit contained in the record, the attorney for the Jackson Hospital defendants states that Anderson's attorney asked him not to file the motion until after the impending Memorial Day weekend and that, as a courtesy, he waited until Tuesday, May 28, 2013, to file the motion.  Prior to the filing on the afternoon of May 28 of an amended answer and the summary-judgment motion asserting judicial estoppel as a ground, however, Anderson filed a motion in the bankruptcy court seeking to reopen her bankruptcy case, along with amended schedules listing as an asset her cause of action against the Jackson Hospital

6

defendants. Two days later, on May 30, 2013, Hamm filed a similar motion seeking to reopen Anderson's bankruptcy case and to be reappointed trustee, and he thereafter moved the bankruptcy court to authorize him to employ one of the attorneys who had been retained by Anderson in her action against the Jackson Hospital defendants as his attorney in that action as well. The bankruptcy court eventually approved all of those motions, reopening Anderson's bankruptcy case on June 14, 2013, and, on July 8, 2013, authorizing Hamm to use Anderson's attorney in the instant action.

After first learning of Anderson's medical-malpractice claim, Hamm also, on May 31, 2013, filed a motion with the trial court in this action, notifying it that he had just learned of Anderson's medical-malpractice claim and that he was seeking to reopen Anderson's bankruptcy case and to be reappointed trustee in the case. Hamm further stated in that motion that he was in current "discussions with an attorney to represent ... the plaintiff/trustee's interest" and he requested that the case be stayed until a decision was made as to representation. It is not clear whether the trial court

7

ever explicitly ruled on Hamm's request for a stay, but the discovery process appears to have continued during this time.

On November 4, 2013, Hamm filed a motion to formally intervene in this action, asserting that he was the real party in interest under Rule 17. The Jackson Hospital defendants thereafter filed an objection, arguing that Rule 17 allows a real party in interest to be substituted for the original party only if the motion seeking to make the substitution is made within "a reasonable time" after the issue is raised, and, they argued, Hamm's more than five-month delay was not a "reasonable time." On November 14, 2013, the trial court conducted a hearing at which it heard arguments on the issues raised by the parties in connection with the Jackson Hospital defendants' summary-judgment motion and Hamm's motion to intervene. On December 9, 2013, the trial court entered an order resolving those issues, stating as follows:

> "[W]ith regard to defendants' motion for summary judgment, the court notes that such motion is based upon the doctrine of judicial estoppel (contending that the plaintiff failed to disclose her cause of action to the bankruptcy court during her Chapter 7 proceedings) and on the contention that plaintiff Joanne Anderson is not the real party in interest. ... [T]he plaintiff has now amended the complaint and [Hamm,] the trustee in bankruptcy has been permitted to intervene as the real party in

8

> interest. Pursuant to <u>Hamm v. Norfolk Southern Railway Co.</u>, 52 So. 3d 484 (Ala. 2010), the defendants' motion for summary judgment is denied in part, such that [Hamm] shall be permitted to pursue Joanne Anderson's claims against the defendants for a recovery up to the amount necessary to pay the claims of Anderson's creditors and expenses associated with the related bankruptcy proceedings. The motion for summary judgment is granted in all other respects, and summary judgment is hereby entered in favor of the defendants and against Plaintiff Joanne Anderson as to all claims brought by her."

However, the trial court recognized that there was substantial ground for difference of opinion regarding its conclusions of law, and it accordingly certified its order for an interlocutory appeal pursuant to Rule 5.

On December 23, 2013, the Jackson Hospital defendants petitioned this Court for permission to appeal immediately the trial court's order insofar it held that Hamm's motion to intervene was timely under Rule 17 (case no. 1130342), and, on December 24, 2013, Anderson petitioned this Court for permission to appeal immediately the trial court's order insofar as it held that she -- as opposed to Hamm acting on behalf of her creditors -- was judicially estopped from proceeding with her medical-malpractice claim (case no. 1130357). On May 27, 2014, this Court granted both petitions

1130342, 1130357

and ordered briefing. This Court has now elected to treat both petitions for permission to appeal as petitions for a writ of mandamus.[1] The Jackson Hospital defendants and Hamm have now filed briefs in case no. 1130342, and the Jackson Hospital defendants and Anderson have filed briefs in case no. 1130357.

_____

[1]Although this Court granted both the Jackson Hospital defendants' petition and Anderson's petition to file permissive appeals pursuant to Rule 5, upon further examination it is apparent that a petition for a writ of mandamus is the appropriate means by which to seek review of the issues they raise -- whether Hamm timely moved to substitute himself as the real party in interest and whether Anderson should be allowed to proceed as the real party in interest regardless of her bankruptcy filing and initial failure to disclose her claim in those bankruptcy proceedings. See Ex parte U.S. Bank Nat'l Ass'n, [Ms. 1120904, Feb. 7, 2014] ___ So. 3d ___, ___ (Ala. 2014) (listing issues this Court has held to be appropriate for mandamus review); Ex parte Tyson Foods, Inc., 146 So. 3d 1041 (Ala. 2013) (reviewing, on petition for writ of mandamus, the trial court's ruling on a motion seeking to add a real party in interest); and Ex parte Chemical Lime of Alabama, Inc., 916 So. 2d 594, 596-97 (Ala. 2005) (considering, on petition for writ of mandamus, whether plaintiffs had timely moved to substitute defendant for a fictitiously named defendant). Accordingly, we now exercise our discretion to treat the parties' permissive appeals as petitions for the writ of mandamus. See, e.g., Ex parte Watson, 37 So. 3d 752, 757 (Ala. 2009) ("This Court ordered that the defendants' petition for permission to appeal be treated as a petition for a writ of mandamus ...."), and Ex parte G & G Steel, Inc., 601 So. 2d 990, 991 (Ala. 1992) ("This Court has elected to treat the Rule 5 petition for permission to appeal as a petition for a writ of mandamus.").

II.

In Hamm v. Norfolk Southern Ry. Co., 52 So. 3d 484, 493 n. 3 (Ala. 2010), this Court indicated that it reviews a trial court's decision regarding what constitutes "a reasonable time" for purposes of Rule 17 to determine whether the court exceeded its discretion:

> "[T]he question whether a 'reasonable time' would have passed and whether the action should have been dismissed at that juncture for a failure of substitution are questions as to which a trial court is to exercise discretion based on its assessment of the type of case and its facts and the procedural history of the case. [6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,] Federal Practice & Procedure at § 1555 [(2d ed. 1990)] ('What constitutes a reasonable time is a matter of judicial discretion and will depend upon the facts of each case.')."

We further quoted in Hamm the United States Court of Appeals for the Eleventh Circuit:

> "'"[W]e review the district court's application of judicial estoppel for abuse of discretion." Burnes [v. Pemco Aeroplex, Inc.], 291 F.3d [1282,] 1284 [(11th Cir. 2002)]. "The abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." Talavera v. School Bd. of Palm Beach County, 129 F.3d 1214, 1216 (11th Cir. 1997).'"

52 So. 3d at 489 (quoting Parker v. Wendy's Int'l, Inc., 365 F.3d 1268, 1271 (11th Cir. 2004)).  See also Hughes v.

11

Mitchell Co., 49 So. 3d 192, 203 (Ala. 2010) (stating that "there is no general formulation of principle dictating when the doctrine of judicial estoppel applies [and] such a decision is left to the court's discretion"). Thus, we review the trial court's decision on both the Rule 17 and judicial-estoppel issues to determine whether it exceeded its discretion.[2]

_____

   [2]In Lumpkin v. City of Gulf Shores, 964 So. 2d 1233 (Ala. Civ. App. 2006), the Court of Civil Appeals affirmed a summary judgment entered in favor of the appellee, in part because that court concluded that the appellants had failed to timely substitute the real party in interest as a plaintiff. It appears in that case that the trial court had not articulated its reasons for entering the summary judgment, and it is not clear that the issue whether the plaintiffs had been given the Rule 17(a)-mandated "reasonable time" to make substitution of the proper real party in interest had been considered by the trial court or even raised by the parties before the summary judgment was entered. Accordingly, the Court of Civil Appeals appropriately considered that issue de novo. See Lumpkin, 964 So. 2d at 1236 (stating that the appellants prefaced their argument that they should still be allowed to substitute the real party in interest by stating: "'[I]f the trial court's rationale for dismissing [their] appeal was that [the Association] instead of the [appellants] was the real party in interest, then [the Association] should be joined or substituted to prevent what is at present a gross miscarriage of justice.'" (quoting the appellants' brief) (emphasis added)). In the instant case, however, it is apparent from the trial court's order ruling on the Jackson Hospital defendants' summary-judgment motion and Hamm's motion to intervene that the trial court had affirmatively considered the timeliness issue and found that Hamm had moved within a reasonable time to be named the real party in interest. Accordingly, for the reasons explained in Hamm, 52 So. 3d at

12

III.

We first consider the Jackson Hospital defendants' arguments in case no. 1130342 concerning the timeliness of Hamm's intervention. The issue presented in this case was aptly stated by the trial court as being "whether [Hamm's] motion for leave to intervene and to file [an] amended complaint was timely and properly filed pursuant to Rules 17 and/or 24 of the Alabama Rules of Civil Procedure and the applicable statute of limitations." Rule 17(a) provides, in pertinent part:

> "No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."

In this case, the first "objection" to Anderson's status as the real party in interest to assert the medical-malpractice claim against the Jackson Hospital defendants came on May 28, 2013, when the Jackson Hospital defendants filed an amended answer succinctly asserting that "[Anderson] is not the real

_____

489 n. 3, we review that decision for an excess of discretion.

13

party in interest in this case." It is thereafter undisputed that Hamm did not formally move to take Anderson's place as the real party in interest until November 5, 2013 -- over five months after the initial objection was made. It is apparent that Hamm became aware of the objection at approximately the same time the objection was made because, on May 30, 2013, he moved the bankruptcy court to reopen Anderson's bankruptcy case; accordingly, the relevant question for the trial court was whether that five-month delay was reasonable.

The Jackson Hospital defendants essentially argue that a five-month delay is per se unreasonable and, in support of that argument, cite Lumpkin v. City of Gulf Shores, 964 So. 2d 1233 (Ala. Civ. App. 2006), and Wilson v. Tucker, No. 10-CV-0714-CVE-FHM (N.D. Okla. Jan. 5, 2011) (not reported in F. Supp. 2d).[3] In Lumpkin, the Court of Civil Appeals indicated that a summary judgment was due to be affirmed because, in the

_____

[3]The United States District Court in Wilson considered the meaning of "a reasonable time" in Rule 17(a), Fed. R. Civ. P., which is substantially similar to Rule 17(a), Ala. R. Civ. P. We have stated that "[b]ecause the Alabama Rules of Civil Procedure are patterned after the Federal Rules of Civil Procedure, federal cases construing the Federal Rules of Civil Procedure are persuasive authority in construing the Alabama Rules of Civil Procedure." Ex parte Alabama State Pers. Bd., 54 So. 3d 886, 893 (Ala. 2010).

two-month period after the appellee had articulated a real-party-in-interest challenge, the appellants "did nothing" to remedy the issue by moving either to substitute or to join the identified real party in interest. 964 So. 2d at 1236. Similarly, in Wilson, the United States District Court for the Northern District of Oklahoma granted the defendant's motion to dismiss after neither the plaintiff nor the trustee appointed in the plaintiff's separate bankruptcy case "made any effort to substitute the trustee as the real party in interest" in the two-month period after the defendant had asserted a real-party-in-interest challenge. The Jackson Hospital defendants argue that the principle to be gleaned from these cases is that, if a two-month delay is unreasonable, then a five-month delay surely is unreasonable.

We disagree. After reviewing these and other relevant cases, we think the principle that is most apparent is that trial courts are best equipped to decide what constitutes "a reasonable time" under Rule 17(a) in any particular case based on their familiarity with the facts and specific history of the case, and, accordingly, an appellate court should generally defer to the trial court's exercise of that

15

discretion.   Given the facts of a particular case, a trial court may decide that two months is not a reasonable time, or it may decide that an even shorter period is not reasonable, or that a longer period is reasonable.   For example, in Killmeyer v. Oglebay Norton Co., 817 F. Supp. 2d 681 (W.D. Pa. 2011), the United States District Court for the Western District of Pennsylvania considered the same general issue raised in this case -- what was a reasonable time for a bankruptcy trustee to move to substitute himself as the real party in interest in an action brought by a Chapter 7 debtor. After noting that what constitutes a reasonable time is a matter of judicial discretion dependant on the facts of the case, the federal district court concluded that the trustee's motion to substitute, made approximately four months after the defendants had asserted a formal real-party-in-interest challenge and five months after the trustee first learned of the action, was nevertheless timely.   817 F. Supp. 2d at 690. The federal district court further noted that, as in the instant case, part of any delay was attributable to the fact that the trustee had not known of the action at the time it was filed and, upon learning of the action, the trustee

16

subsequently had to seek the bankruptcy court's approval to have counsel appointed to prosecute the claim on the trustee's behalf.[4] Id.

Thus, the Killmeyer court concluded that a trustee's motion to substitute himself as plaintiff for a Chapter 7 debtor was timely even though that motion was filed approximately five months after the trustee first learned that the Chapter 7 debtor had initiated the action. The trial court in this action made essentially the same conclusion, and we cannot say that it exceeded its discretion by doing so. Accordingly, the action should proceed as if it had been commenced in the name of Hamm, the real party in interest. Rule 17(a). See also Board of Water & Sewer Comm'rs of City of Mobile v. McDonald, 56 Ala. App. 426, 430-31, 322 So. 2d 717, 721 (Ala. Civ. App. 1975) (stating that, when Rule 17(a) is applied, it is unnecessary to resort to Rule 15(c), Ala. R.

---

[4]We further note that Hamm notified the trial court on May 31, 2013 -- just days after learning that Anderson had initiated an action against the Jackson Hospital defendants -- that he was seeking counsel to represent "the plaintiff/trustee's interest" in that case moving forward. Thus, Hamm essentially notified the trial court at that time that he ratified Anderson's commencement of the action and would be taking it over.

1130342, 1130357

Civ. P., to determine whether an amended pleading relates back to the date of an original pleading).

IV.

We next consider Anderson's argument in case no. 1130357 that she should be allowed to prosecute this action in her individual capacity. The trial court stated the issue in that regard as follows:

"Whether [Anderson] is barred from prosecuting this action in her individual capacity: (a) based on the doctrine of judicial estoppel, by virtue of her not disclosing the presently advanced cause of action during her Chapter 7 proceedings, and/or (b) based on her not being the real party in interest."

Anderson essentially argues to this Court that the Jackson Hospital defendants failed to establish that the doctrine of judicial estoppel should apply and that the trial court's ruling unfairly prevents her from petitioning the bankruptcy court for permission to prosecute the medical-malpractice action herself as the real party in interest. Neither of those arguments has merit.

First, our decision in Hamm illustrates that the trial court's application of the doctrine of judicial estoppel was proper. In Hamm, the plaintiff filed a bankruptcy petition in October 2004; that petition did not disclose any potential

18

causes of action in the list of assets submitted to the bankruptcy court. 52 So. 3d at 487. Nevertheless, in January 2005, the plaintiff initiated an action against his former employer, and, in March 2005, he received a complete discharge of debts and his bankruptcy case was closed. Id. In January 2006, the plaintiff's former employer learned of the bankruptcy case during a deposition, and it thereafter amended its answer to assert the affirmative defense of judicial estoppel and filed a motion for a summary judgment on that same ground. Id. Thereafter, the plaintiff moved the bankruptcy court to reopen his bankruptcy estate, and he also filed amended schedules listing the cause of action against his former employer as an asset of the bankruptcy estate. 52 So. 3d at 488. Nevertheless, the trial court granted the employer's summary-judgment motion, and, after the trial court also denied a postjudgment motion seeking to substitute the bankruptcy trustee as the real party in interest, the plaintiff and the trustee filed a joint appeal to this Court. Id.

After holding that the bankruptcy trustee was in fact the real party in interest, 52 So. 3d at 491-92, this Court

19

considered what effect the doctrine of judicial estoppel

should have in the case:

> "'In Ex parte First Alabama Bank, [883 So. 2d 1236 (Ala. 2003),] this Court "embrace[d] the factors set forth in New Hampshire v. Maine[, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001),] and join[ed] the mainstream of jurisprudence in dealing with the doctrine of judicial estoppel."' Middleton v. Caterpillar Indus., Inc., 979 So. 2d 53, 60 (Ala. 2007) (quoting Ex parte First Alabama Bank, 883 So. 2d at 1246). For judicial estoppel to apply (1) 'a party's later position must be "clearly inconsistent" with its earlier position'; (2) the party must have been successful in the prior proceeding 'so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or second court was misled"'; and (3) 'the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.' New Hampshire, 532 U.S. at 750-51 (citations omitted); see Middleton, 979 So. 2d at 60-61; Ex parte First Alabama Bank, 883 So. 2d at 1244-45. This Court has stated that '[t]he purpose of judicial estoppel is "'to protect the integrity of the judicial process' by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment.'"' Middleton, 979 So. 2d at 59 (quoting New Hampshire, 532 U.S. at 749-50; other citation omitted).
>
> "It is evident that the trial court properly applied the doctrine of judicial estoppel to [the plaintiff] when it entered the summary judgment against him. After he filed the ... action [against his former employer], [the plaintiff] failed to amend his bankruptcy schedules to reflect his ... claim as a potential asset, and thereafter he received a 'no-assets' discharge in the bankruptcy

20

proceeding. Despite this outcome, [the plaintiff] continued to prosecute the ... action. Thus, [the plaintiff] had taken clearly inconsistent positions; he was successful in his bankruptcy proceeding; and he potentially could have received the unfair advantage of a possible $750,000 'windfall' if he succeeded in his claim against [his former employer].

"The fact that the trial court properly applied the doctrine of judicial estoppel to [the plaintiff], however, does not mean that that doctrine necessarily is applicable to [the] bankruptcy trustee. ... The trustee has never taken inconsistent positions with regard to the ... claim because he did not know about the claim until the bankruptcy schedules were amended to reflect the existence of the claim as a potential asset to the estate. Therefore, [the trustee] cannot be judicially estopped from pursuing the claim."

52 So. 3d at 494. Thus, Hamm clearly indicates that the doctrine of judicial estoppel can operate to bar a party from pursuing an action if that party previously failed to disclose the cause of action as an asset during bankruptcy proceedings that take place after the cause of action arises.

Anderson nevertheless argues that the doctrine of judicial estoppel should not apply to her for three reasons. First, she argues that, unlike the plaintiff in Hamm, she did not know of the existence of her cause of action until after her bankruptcy case was closed. Thus, she argues, she has

21

never knowingly asserted inconsistent positions so as to implicate the doctrine of judicial estoppel.

However, this Court has indicated that the crucial inquiry is not whether a plaintiff actually knew of a potential claim, but whether a reasonable person should have known about the potential claim. See Hamm, 52 So. 3d at 498 (citing Jinright v. Paulk, 758 So. 2d 553, 559 (Ala. 2000), for the proposition that "among the questions of fact essential to a determination of the applicability of the doctrine of judicial estoppel is 'whether a debtor who is engaged in bankruptcy proceedings knew or should have known about claims or causes of action that should be disclosed as assets'"), and Luna, 631 So. 2d at 919 ("[The plaintiff] further contends that the doctrine of judicial estoppel should not be applied to him because, he says, he was unaware of his claims against [the defendant] until after his bankruptcy discharge. This argument is also without merit. Certainly, if the facts ... were as he says they were, then [the plaintiff], acting as a reasonable person, would have known, when he filed his bankruptcy proceeding, that he had a claim against [the defendant]."). In this case, Anderson alleges

that the Jackson Hospital defendants' negligence following the October 2010 heart surgery resulted in the amputation of her feet in December 2010. Thus, the result of the alleged negligence was admittedly apparent by December 2010, and, if the facts are as Anderson has asserted them to be, a reasonable person should accordingly have been aware by that time that a possible cause of action against the Jackson Hospital defendants existed. Moreover, Anderson essentially agreed with this conclusion in a January 2013 amendment to her complaint in which she stated that "[p]laintiff's injury and defendants' substandard care [were] not discovered and could not have reasonably been discovered prior to December of 2010." "'"Normally, factual assertions in pleadings and pretrial orders are considered to be judicial admissions conclusively binding on the party who made them."'" Noland Health Servs., Inc. v. Wright, 971 So. 2d 681, 685-86 (Ala. 2007) (quoting Jones v. Kassouf & Co., 949 So. 2d 136, 142 (Ala. 2006) (Lyons, J., dissenting), quoting in turn White v. ARCO/Polymers, Inc., 720 F.2d 1391, 1396 (5th Cir. 1983)). Accordingly, we find no merit in Anderson's argument that the trial court should not have applied the doctrine of judicial

23

1130342, 1130357

estoppel against her because she alleges she was not aware that she had a possible claim against the Jackson Hospital defendants at any time during the pendency of her bankruptcy case.[5]

---

[5]We further note that we are not impressed by Anderson's contention that, "[a]fter the cause of action against appellees became known to [her], she took the extraordinary measure of reopening her bankruptcy case and amending her bankruptcy schedules to list the cause of action against appellees." Anderson's brief in case no. 1130357, p. 21-22. Anderson does not dispute that she moved to reopen her bankruptcy case in May 2013 only after being notified that the Jackson Hospital defendants were preparing to move for a summary judgment on a judicial-estoppel ground; she undisputedly took no action to do so on her own initiative in the seven months following the initiation of her lawsuit. In Hamm, we warned against the incentives that would be created if the initial failure to disclose assets in bankruptcy proceedings was excused by giving effect to subsequent amendments without consequence:

> "'"Allowing [a debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor's assets." Burnes[ v. Pemco Aeroplex, Inc., 291 F.3d 1282,] 1288 [(11th Cir. 2002)] (citation omitted). As such, [the debtor's] disclosure upon re-opening the bankruptcy estate deserves no favor.'"

52 So. 3d at 495 (quoting Barger v. City of Cartersville, Ga., 348 F.3d 1289, 1297 (11th Cir. 2003)).

24

Anderson next argues that the doctrine of judicial estoppel should not have been applied against her because, she argues, she will gain no unfair advantage if she is allowed to pursue her action against the Jackson Hospital defendants in that the first $28,000 of any judgment awarded would go to those entities holding her discharged debt. However, she fails to recognize that she has already had $28,000 of debt discharged and that the bankruptcy court, though it granted her motion to reopen her bankruptcy case, denied her motion to set aside the judgment discharging her debts. In Hamm, we noted that the unfair-advantage prong of the Ex parte First Alabama Bank, 883 So. 2d 1236 (Ala. 2003), judicial-estoppel test was satisfied because the plaintiff "potentially could have received the unfair advantage of a possible $750,000 'windfall'" if he was successful in prosecuting the claim omitted from his bankruptcy petition. 52 So. 3d at 494. That same potential for a windfall was present in this case as well, and, as we explained in Hamm, it is sufficient to establish the unfair-advantage prong of the judicial-estoppel test; accordingly, Anderson's argument on this point is without merit.

25

Anderson's final argument regarding the doctrine of judicial estoppel is that the Jackson Hospital defendants suffer from unclean hands in this matter, which, she says, should estop them from asserting judicial estoppel. Essentially, Anderson argues that the Jackson Hospital defendants fraudulently concealed mistakes that, she generally alleges, were made during her coronary surgery and/or her follow-up care until after her bankruptcy case was completed and that they accordingly should not be allowed to profit from their wrongful conduct by invoking the doctrine of judicial estoppel against her. However, as discussed above, we have already concluded, based partly upon Anderson's own statements in her amended pleadings, that the Jackson Hospital defendants' alleged negligence could reasonably have been discovered by December 2010. Thus, Anderson cannot attribute to the Jackson Hospital defendants her failure, in November 2011, to disclose to the bankruptcy court a claim based upon that alleged negligence.

Moreover, this Court has stated that "'the doctrine of unclean hands cannot be applied in the context of nebulous speculation or vague generalities; but rather it finds

26

expression in specific acts of willful misconduct which is morally reprehensible as to known facts.'" Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So. 2d 924, 932 (Ala. 2007) (quoting Sterling Oil of Oklahoma, Inc. v. Pack, 291 Ala. 727, 746, 287 So. 2d 847, 864 (1973)). Although Anderson has generally accused the Jackson Hospital defendants of fraudulently hiding their alleged negligence, she does not, in her initial brief to this Court, cite any "specific acts of willful misconduct." After the Jackson Hospital defendants identified this deficiency, Anderson attempted to correct it in her reply brief; however, that attempt comes too late. As the Court of Criminal Appeals explained in L.J.K. v. State, 942 So. 2d 854, 868-69 (Ala. Crim. App. 2005):

> "'Recitation of allegations without citation to any legal authority and without adequate recitation of the facts relied upon has been deemed a waiver of the arguments listed.' Hamm v. State, 913 So. 2d 460, 486 (Ala. Crim. App. 2002). [The appellant] cites no legal authority in support of his argument. He also fails to provide an adequate recitation of the facts relied upon in support of his argument; merely referring to the record without setting forth the facts in support of an argument is not sufficient to comply with Rule 28(a)(10), Ala. R. App. P. Moreover, although [the appellant] cites Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in his reply brief, and

27

lists four specific allegations of ineffective assistance of counsel, because his initial brief fails to comply with Rule 28(a)(10), and he did not include those specific allegations in his initial brief, we consider them to have been raised for the first time in his reply brief. ... As noted above, 'an appellant may not raise a new issue for the first time in a reply brief.' Woods v. State, 845 So. 2d [843] at 846 [(Ala. Crim. App. 2002)]. See also James v. State, 788 So. 2d 185, 192 n. 2 (Ala. Crim. App. 2000) (noting that an appellant may not raise for the first time in his reply brief specific allegations of ineffective assistance of counsel that were not raised in his initial appellate brief)."

We agree with the Court of Criminal Appeals' recitation of the applicability of Rule 28(a)(10), Ala. R. App. P. Anderson has not established that the trial court exceeded its discretion in the manner in which it applied the doctrine of judicial estoppel against her.

Anderson's final argument is that the summary judgment should be reversed because, she argues, she should be given the opportunity to ask the bankruptcy court if she, instead of Hamm, the trustee, can pursue her claim against the Jackson Hospital defendants. Anderson acknowledges that Hamm is properly viewed as the real party in interest; however, she argues that debtors are nevertheless sometimes allowed to prosecute claims themselves if the trustee abandons the claim

28

or the bankruptcy court authorizes the debtor to prosecute the claim instead of the trustee. See Hamm, 52 So. 3d at 491. It is evident by Hamm's actions in this case that he has no intention of abandoning the action and leaving its prosecution to Anderson, but Anderson argues that the bankruptcy court might nevertheless authorize her to pursue the action instead of Hamm and urges us to reverse the order entered by the trial court so she can pursue this possibility with the bankruptcy court.

Although we have no desire to remove this issue from the bankruptcy court's purview, Anderson's argument simply comes too late. Anderson could have made her request to the bankruptcy court at any time before the entry of the judgment that is the subject of these petitions but failed to do so. Moreover, Anderson completely failed to raise this issue with the trial court, and we cannot hold the trial court in error for failing to give Anderson time to pursue this avenue with the bankruptcy court when she never asked the trial court for that additional time. See Andrews v. Merritt Oil Co., 612 So. 2d 409, 410 (Ala. 1992) ("This Court cannot consider arguments raised for the first time on appeal; rather, our review is

29

restricted to the evidence and arguments considered by the trial court."). Anderson's argument is without merit.

V.

Anderson sued the Jackson Hospital defendants in October 2012 alleging that both of her feet were amputated as a result of Dr. Kwan's negligence. However, because Anderson failed to disclose this potential cause of action when she filed for bankruptcy in November 2011, the Jackson Hospital defendants moved the trial court to enter a summary judgment in their favor on the ground of judicial estoppel. Thereafter, Hamm, the bankruptcy trustee, moved to be substituted as the real party in interest in the action initiated by Anderson based on well established law holding that causes of action held by a debtor in bankruptcy become the responsibility of the trustee. The trial court subsequently entered an order substituting Hamm as the plaintiff, and both the Jackson Hospital defendants and Anderson sought review of that decision in this Court: The Jackson Hospital defendants argue that Hamm waived his right to be substituted as the real party in interest and Anderson argues that she should be allowed to pursue her claim instead of Hamm. However, as explained above, the parties

30

1130342, 1130357

have failed to establish that the trial court exceeded its discretion with regard to either decision, and we accordingly deny the parties' petitions for the writ of mandamus.

1130342 -- PETITION DENIED.

1130357 -- PETITION DENIED.

Bolin, Shaw, Main, Wise, and Bryan, JJ., concur.

Murdock, J., concurs specially.

Moore, C.J., concurs in the result.

Parker, J., recuses himself.

1130342, 1130357

MURDOCK, Justice (concurring specially).

I concur in the main opinion, but I write separately to address note 2 of that opinion. In note 2, the main opinion summarizes the actions of the Court of Civil Appeals in Lumpkin v. City of Gulf Shores, 964 So. 2d 1233 (Ala. Civ. App. 2006), as follows:

"[T]he Court of Civil Appeals affirmed a summary judgment entered in favor of the appellee, in part because that court concluded that the appellants had failed to timely substitute the real party in interest as a plaintiff. It appears in that case that the trial court had not articulated its reasons for entering the summary judgment, and it is not clear that the issue whether the plaintiffs had been given the Rule 17(a)-mandated 'reasonable time' to make substitution of the proper real party in interest had been considered by the trial court or even raised by the parties before the summary judgment was entered. Accordingly, the Court of Civil Appeals appropriately considered that issue de novo."

___ So. 3d at ___ n. 2. The notion that "the Court of Civil Appeals appropriately considered [the stated] issue de novo" would be correct only if it could be ascertained from the record, including filings made in the trial court and the trial court's order, that the trial court's summary-judgment order was not based on that issue and, further, only if the issue was one that could be invoked sua sponte by the

32

appellate court because it presented an alternative valid "legal ground" for affirming the trial court's order and, in addition, could be so invoked without implicating the due-process rights of the parties adversely affected by that invocation. I do not read note 2 as saying anything other than this.